**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | AU:21-CR-048-LY-12 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AUSTIN, TEXAS |
| | ) | |
| SHAWN MALMQUIST, | ) | |
| | ) | |
| Defendant. | ) | SEPTEMBER 23, 2022 |

************************************************
TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE LEE YEAKEL
************************************************

APPEARANCES:

FOR THE PLAINTIFF:    DANIEL D. GUESS
                      UNITED STATES ATTORNEY'S OFFICE
                      903 SAN JACINTO BOULEVARD, SUITE 334
                      AUSTIN, TEXAS 78701

FOR THE DEFENDANT:    WILLIAM J. BROWNING
                      LAW OFFICE OF WILLIAM J. BROWNING
                      1101 WEST 34TH STREET, SUITE 139
                      AUSTIN, TEXAS 78705

COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
                      501 WEST 5TH STREET, SUITE 4152
                      AUSTIN, TEXAS 78701
                      (512) 391-8791

**EXHIBIT INDEX**

|  | OFFD/ADM | |
|---|---|---|
| Defendant | | |
| 1 | 5 | 5 |

Proceedings recorded by electronic sound recording, transcript produced by computer.

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

(Open court, defendant present)

THE CLERK:  The Court calls the following case for sentencing, 21-CR-48, *United States v. Defendant Number 12, Shawn Malmquist*.

MR. GUESS:  Dan Guess for the government, Your Honor.

MR. BROWNING:  Good Morning, Your Honor. William Browning for Mr. Malmquist.

THE COURT:  All right.  Will the defendant please state his name.

THE DEFENDANT:  Shawn David Malmquist.

THE COURT:  Mr. Malmquist, you have pleaded guilty to count one of an indictment charging you with conspiracy to possess with intent to distribute 50 or more games of methamphetamine; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  You pleaded guilty before United States Magistrate Judge Susan Hightower on July 6th, 2020.  Do you remember that?

THE DEFENDANT:  Yes, sir.

THE COURT:  I accepted your plea of guilty and the report and recommendation of the magistrate judge by order signed August 4th, 2022, and we're here today for sentencing.

Are you prepared to proceed with sentencing at this time?

THE DEFENDANT:  Yes, sir.

THE COURT:  Then the court reiterates its previous finding and finds you guilty of the offense to which you have pleaded guilty.

Have you had sufficient time to review with your lawyer the presentence investigation report prepared by the probation department in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you aware that under the guidelines established by the United States Sentencing Commission, which are advisory to this court, that the probation department has computed your total offense level as 30 and your criminal history category as 6, meaning that if this court were to determine that a guideline sentence was an appropriate sentence to impose in this case, I could sentence you to 210 months confinement in the Bureau of Prisons, a term of supervised release of five years, a fine of $5 million, and a special assessment of $100?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you also understand that under the statute under which you have been convicted, I must sentence you to a minimum of no less than five years confinement in the Bureau of Prisons and could sentence you to 40 years confinement in the Bureau of Prisons, a term of supervised

release of the remainder of your life, a fine of $5 million, and a special assessment of $100?

THE DEFENDANT:  Yes, sir.

THE COURT:  Does the government have objection to the presentence investigation report?

MR. GUESS:  No, Your Honor.

THE COURT:  Does the defendant have objection to the presentence investigation report?

MR. BROWNING:  Your Honor, we do.

THE COURT:  I will hear you then, Mr. Browning, on your objections to the presentence investigation report.

MR. BROWNING:  And, Your Honor, I don't know.  I have -- I attempted to file an exhibit last night.  And when I upgraded my Pacer account, I then lost privileges to file in this court.  So I have an exhibit that I would like to tender to the court.  I can e-mail it, but I can't e-mail it right now.  It is a document prepared by the United States Sentencing Commission from May of this year.  So I would offer that as an exhibit.

THE COURT:  Any objection, Mr. Guess?

MR. GUESS:  No objection, Your Honor.

THE COURT:  All right.  The court admits for purposes of this hearing Defendant's Exhibit 1 and would recommend to you that you speak with the clerk's office to see what your problem with the electronic filing is.

MR. BROWNING:  Yes.

THE COURT:  It's not a perfect system, I can assure you, but it is what we use now.  It is what the Fifth Circuit and the Judicial Conference of the United States insist we use. So we have it.

MR. BROWNING:  Your Honor, I had the luck to do an appeal of a jury trial out of Judge Pitman's court.  And in light of the words I read in that appeal, I'm going to be as brief as possible today.  But when I upgraded my account is when that happened.

What I would like to do today, Your Honor, is kind of front load my 3553 argument.  Our objections to PSI have to do with what our ultimate goal is for Mr. Malmquist. Mr. Malmquist has a methamphetamine addiction.  And all of this whole reason we are here is that he is an addict and he is addicted to methamphetamine.

The point of offering Defense Exhibit 1 is on page 5. This is a study from the Federal Bureau of Prisons about recidivism, where they tracked drug program participants who had been released since 2010.  And this comes as no surprise to someone like myself that's been doing this for 26 years, that inpatient residential drug treatment drastically reduces recidivism.

Our goal with Mr. Malmquist is to craft a sentence where we can get him into drug treatment in an as low security,

minimum classification as possible facility so that they can give him inpatient drug treatment and, ideally, any other treatment and programs that are available, too.

It has come to light or, due to my research, I believe that the reason that -- despite the 3553 factors, the reason the PSR matters is that the Federal Bureau of Prisons, according to my understanding, enters the data from the PSR into a computer program that comes up with your classification.

And so we're objecting to Mr. Malmquist's acceptance of responsibility because we believe that he did accept responsibility. And also we don't want the BOP flagging him as some kind of not accepting responsibility or not admitting what he did. He has admitted to the offense conduct that has gone on today.

As Your Honor noted in the previous hearing, I think he is Defendant Number 20 or 18 or 19 to have pled to this case. And so our other objection is whether he was a normal participant or whether he was a minor participant in the offense. I believe that there were two drug transactions connected to this conspiracy that Mr. Malmquist participated in, and that's the full extent of his involvement. That matters in terms of the 3553 factors in terms of classifications when he makes it to the Bureau of Prisons. I don't want him labeled in some program or some computer system as being a greater part of a conspiracy than he is.

In terms of the criminal history points, I understand the law, I've read the addendum to the PSR.  The factual reality of state courts with district courts and county courts, you know, it can all be part of one deal, crafted by one district attorney's office.  But due to different schedules, you could find yourself being sentenced on different days.  And so I would argue that the points he's getting for that are simply due to scheduling problems in Williamson County.

And so our argument, Your Honor, is whatever -- our goal is not -- our goal is not the number of months, or regardless of the number of months that you sentence Mr. Malmquist to, our concern is that the PSR and that the sentence deals with 3553 factors, which I've seen case law states is a mandate from the Congress to the courts to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide for needed educational, vocational medical, and correctional treatment for the most effective manner.

We believe that by finding him to -- to have accepted responsibility, find that he was a lesser participant than the norm in this case, and giving him the benefit of the doubt on the criminal history category will get us in the best possible position for Shawn to get the drug treatment that he desperately needs.  And that in terms of recidivism and future

punishment and the benefits of society, the way to ensure that Mr. Malmquist does not come back to court and stops committing crimes is to get him the treatment that he needs.  The only treatment that I know that he's ever had was the 30-day program that he went through has part of his pretrial release.

So that is our argument, Your Honor.

THE COURT:  Mr. Guess?

MR. GUESS:  Your Honor, addressing the objections, first, the pretrial service officer obviously got the criminal history correct.  Looking at the paragraphs within the PSR, he was guilty of two distinct offenses on separate dates in separate courts.  The objection as to criminal history should be denied, and that the pretrial services officer got that properly in the report.

Mr. Browning made a statement, you know, this is an addict.  Well, Mr. Malmquist is more than an addict. Mr. Malmquist is a drug distributor.  Mr. Malmquist is someone who was involved in an extensive drug trafficking conspiracy. He dealt in large amounts of methamphetamine.  Maybe some of it was to support his habit.  But at the end of the day, he was passing poison out to other people in our community.

On his first encounter with the officers after the T3 was started, there was 308 grams of methamphetamine, on the second one, 1,000 grams of methamphetamine.  Mr. Malmquist was intercepted on numerous telephone calls talking to Karl Beck,

negotiating how much methamphetamine he was going to get and how much money he would pay for that.

Mr. Malmquist was, at a minimum, of an average participant within this large distribution organization. Without people like Mr. Malmquist, these organizations don't exist, Your Honor.

As to the objection as to whether or not the acceptance of responsibility points should be awarded, again, the pretrial services officer got this right, Your Honor.  And I see Mr. Malmquist's family sitting there, and I remember when we first arrested Mr. Malmquist, the government asked for detention in this case.  Mr. Malmquist and his family told Judge Hightower he can be good.  He can behave himself while he's out on pretrial release.  We'll put him in a program. We'll make sure that he does what he's supposed to do. Mr. Malmquist told Judge Hightower that he could abide by the conditions that she set for him.  Put him into a program.  And, as you can see from the presentence report, he failed out of that program.  Twice he tested positive for methamphetamine.

More importantly, the court gave him one more chance and said, You know what?  I'm going to let you stay out as long as you agree that you won't violate the law any longer.  What did Mr. Malmquist do?  Went out and scored more methamphetamine.  This time it was 50 grams.  Again, that's a distribution amount, Your Honor.

Mr. Malmquist has not learned a single lesson in the time that he was first arrested in April of 2021 until he was re-incarcerated.  If he had stayed in jail, we wouldn't be talking about the acceptance of responsibility points.  Instead, Mr. Malmquist made that decision and the pretrial services officer got this correct.

Based on everything that you have before you, the objection should be overruled, Your Honor.

THE COURT:  You may close.

MR. BROWNING:  Your Honor, this is another issue I'd like to bring up before we do the final sentence.  In terms of the participation role, Mr. Malmquist was in custody for a significant period of time while this conspiracy was going on.  He was in custody in Williamson County from October 2020 to April 2021 and in custody in Travis County from June of '20 to October of '20.  Those are on the two arrests that are the two cases that are mentioned in the PSR.  So I would argue that that means that he was not involved in the conspiracy during those times, and I would also ask for credit for that time towards whatever sentence the Court does impose.

Your Honor, as I said in my objection to PSI, Mr. -- Mr. Malmquist pled guilty, he admitted his guilt in the acts involved in this conspiracy.  If there's any delay, that has to do with discovery review and the volume of calls in this case.  And so I think the Court should -- should give him acceptance

of responsibility points, I think the Court should find that he was not a regular participant, and we would ask for -- and also ask that we -- for the criminal history category to not reflect that extra point.

THE CLERK:  Well, the Court has carefully gone over your objections and carefully gone over the presentence investigation report, carefully gone over the probation department's addendum.  As was mentioned earlier today, counting the sentencing I just conducted, I have sentenced 20 defendants in this 33-person indictment.  I'm quite aware of everything that has occurred in this case.  I am quite aware of the far-reaching tentacles of this drug trafficking organization.  I am quite aware, after having reviewed numerous presentence investigation reports during that period of time as to every defendant's role in this.

I am sympathetic to the fact that we want this defendant to receive drug treatment that would actually address his addiction.  I am familiar with the paper that you presented as Defendant's Exhibit Number 1, which I accepted.  I have dealt a lot with this case and other drug trafficking organizations.

A role in a drug trafficking organization, while although the temporal element is important, it is not conclusive.  This organization employed a great number of individuals, it sold a great number of narcotics, it was

sophisticated, it was wide-ranging.  I find that the probation department got it right as to this defendant's role.  I find, when I compare him to all of the other defendants, he is an average participant; he is not entitled to a reduction for a minor role.

In addition, I don't have any evidence before me other than surmise about the crimes in Williamson County, Texas and whether or not it was a scheduling problem or what.  But I have read the presentence investigation report carefully, and I find the probation department got that correct.  So I overrule that objection.

Now, we're left with the acceptance of responsibility.  Defendants usually get acceptance of responsibility.  And I think Mr. Guess is correct when he says that if this defendant had remained in jail, we wouldn't be talking about the three points for acceptance of responsibility right now.  But we are because this defendant appeared in front of a magistrate judge and a magistrate judge conducted a hearing.  It was represented to the magistrate judge that the defendant understood the situation, he was released on bond, knowing what would happen if he reverted to the use of drugs.

I'm highly sympathetic to his situation and I do believe that he should get drug treatment, but I find he is not entitled to acceptance of responsibility, because after those representations, he went back to at least the use of drugs, and

perhaps due to the quantities, might have distributed some or might not.  I do not make a finding that he did, but he violated the representations to the court with regard to use and proximity of drugs and he is not entitled to the acceptance of responsibility.

So the court overrules all of the objections to the presentence investigation report, and I find the correct total offense level to be 30 and the correct criminal history category of this defendant to be 6.

Those rulings having been made, Mr. Browning, do you know of any legal reason why the court should not proceed with sentencing?

MR. BROWNING:  We have no legal reasons, Your Honor.

THE COURT:  That's all I want to hear about right now.  So you don't know of a legal reason?

MR. BROWNING:  No.  No, Your Honor.

THE COURT:  All right.  Does the government know of any legal reason not proceed with sentencing?

MR. GUESS:  No, Your Honor.

THE COURT:  All right.  Now, Mr. Malmquist, Mr. Browning, if either or both of you have anything you would like to say to the court before the court pronounces sentence, I will hear from you at this time and take whatever you have to say into account in determining the appropriate sentence to impose in this case.

THE DEFENDANT:  Your Honor, I realize the substance abuse and severity it has had on my life.  It wasn't the years in jails I've done that made me notice the total damage but the months in rehab and the year away from my newborn son and my child's mother's kids.  I didn't realize the impact and weight it held with them.  My childhood wasn't the smoothest, and I never took the time away from my addiction to realize I had so much value and held them together.  I will make this my last time and make sure that I'm there and able to role model to those kids right from wrong.  I realize life is too short, and my addiction blinded me and has taken me away from a family that wants and needs me in their life.

I realize the error of my ways and will use this time to educate myself more and rehabilitation not only for -- not only for myself but for what matters the most.

MR. GUESS:  Your Honor, if I may, he's reading so fast that I know the court reporter is struggling to keep up with him.  Maybe if --

THE COURT:  Would you slow down just a little bit.

MR. GUESS:  She's got to record everything.

MR. BROWNING:  Mr. Malmquist, maybe I want you to take a deep breath and start all over again from the top.  All right?  Okay.

THE COURT:  Now you may proceed.

MR. BROWNING:  Your Honor, with the Court's

permission, I could read his letter.

THE COURT: Mr. Malmquist, is that acceptable to you?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Browning, you may read his letter, and the court accepts that as a statement by the defendant.

MR. BROWNING: Thank you, Your Honor.

(As read) "Your Honor, I realize the severity of my substance abuse has been -- the severity of substance has been upon my life. It wasn't the years in jail I've done that made me notice the total damage, but the months in rehab and the year away from my newborn son and my child's mother's kids. I didn't realize the impact and weight I held with them.

My childhood wasn't the smoothest, and I never took the time away from my addiction to realize that I had so much value and held them together. I will make this my last time and make sure that I'm there and able to role model to those kids right from wrong. I realize this life is too short and that my addiction blinded me and has taken me away from a family that wants and needs me in their life.

I realize the error of my ways. I will use this time to educate myself and rehabilitation not only for myself but to what matters the most. I know I failed and relapsed, but nothing could help me overcome the fear of losing my kids again at the -- at the court dates I had coming up. I'm human, and I

accept that I handled the situation wrong and going into what has taken me from them from the start.  But you have my word, and that -- that they do that.  I will take this time to work on myself and make sure I never end up any courtroom again.

I admit I was wrong.  I'm not trying to justify.  I hope that you say that I've made effort and that I'm not a bad person.  I was just overcome by fear of losing my family, and that 45 days of rehab couldn't prepare me for the thoughts of losing them again no matter how good I did.  My sobriety and getting back to my family is my priority, and I can't afford to put us through this again."

THE COURT:  Thank you.  Mr. Browning, anything further?

MR. BROWNING:  Your Honor, I agree with the Court, that rehab is what Mr. -- Mr. Malmquist needs.  And I believe that, while the guidelines are important, I don't think the guidelines encapsulate or can possibly really summarize who a human being is.  The question before the Court is:  Who is Shawn Malmquist and what's going to happen and what is he worth and what his -- what are his crimes worth?

I think that the 3553 factors, which I think the Court should view as a mandate from Congress, mean that we have to look at Mr. Malmquist in a different way and craft a sentence that can both punish him and ensure that he's not going to come back; that he's going to be a contributing member

of society on the other side of this; and that a lengthy sentence is not going to achieve those goals.

From this morning I averaged up the sentences that everybody has receive in these cases, and I think the average is around 100 months.  I would argue to the Court that Mr. Malmquist deserves less than 100 months, what the average in this case is.

I would also, before I forget, ask the Court that he get time for the -- credit for the time he spent in both the Williamson County jail and the Travis County jail.  And he does have a pending case, as the Court noted, in Williamson County, and I would ask that whatever sentence he gets here run concurrent with that sentence.  I do know that we have at least one witness that wants to address the court.

THE COURT:  Does the government have anything before sentence is imposed?

MR. GUESS:  Your Honor, I believe the sentence for the people who are similarly associated with Mr. Malmquist in terms of distribution of the large amounts received significantly more than 100 months in terms of this case as whole.  I see several sentences of 151 months, there's 120 months, 120 months.  Based on the totality of the information that you have before you, I believe a sentence at the low end of the guideline range is appropriate in this case, Your Honor.

THE COURT:  Does Probation have anything further?

PROBATION OFFICER:  No, your Honor.

THE COURT:  I recognize that the defendant has strong family support with people in the audience, but if there's anyone who wants to speak, please come forward at this time. And everyone who wants to speak, get up at the same time and come to the gate.  And come forward one at a time, state your name, any relationship you have with the defendant, and then share with the court whatever you want to share.

MR. MALMQUIST:  Thank you, Your Honor.  I'm John Malmquist, father to Shawn Malmquist.  I don't know what it's like to be a drug addict, but I know what it's like to be a father of a drug addict.  I don't know what Shawn's problem is, but he's been given lots of opportunities and I -- we appreciate that.  I do know that when he's out, he's been a good employee of mine.  He's worked for me.  I know he's my son, but he has learned a lot.

He's been a very good father, which that actually kind of surprised me, the way he works with his children.  He lost one child to a still birth, has a three-year-old -- will be three years next month on the 25th, and three stepchildren. To see him interact with them, it's surprising how good he is with them and what he does.

Shawn earned a fair wage, and I don't know how to explain what he did because I never saw it in him.  He hid it pretty well.  But being the father of someone who is a drug

addict, I know that it's a great, great pain.  And I know he's going to do some time.  I just hope he does the smallest amount of time and get treatment, at least.

And I don't speak as a doctor or any -- or a physician of any type or psychologist, but I did learn when I did send him to a therapist and psychologist, Dr. Gill Custer said that Shawn has done his drugs because of an early childhood problem I had with the marriage to his mother and a contested child custody went on for 12 years, maybe more.  I think it was a little more than that.  I had custody of Shawn and his sister.  And it was -- it was extremely hard on these children.

But he's a man now, and I know he's going to have to accept responsibility for whatever you deal out.  But I just hope that he can get help with the drug addiction.  And then as far as Dr. Custer was telling me, Shawn suffers from anxiety and a lot of depression, which the anxiety actually brings on the depression.

So I don't know why he did what he did.  I can't explain it.  But, anyway, if there's any way that you could see that -- do what you can do and, hopefully, he can do what he does the best of his ability.  Thank you.

MS. MARTIN:  Hello.  I'm Lou Ellen Martin.  I'm married to John Malmquist, who you just spoke to.  Now, my experience with Shawn has been over -- a little over 10 years,

where he's already been a grown man compared to children.  I raised children.  I'm a mother as well.  My children are older than Shawn.

But what I want to tell you is my impression of Shawn.  He is a kind person.  He is sweet-mannered.  He is helpful.  He is loving.  You know, I've never actually -- I mean, I haven't been around him his whole life, but I haven't seen anything mean in him at all.

I tend to agree from my experiences that he does have probably more like a self-esteem, something going on that kind of -- it's like a tripping block or something in front of him.  That's what I feel.  Because there's -- there's nothing bad about him.  He's made bad decisions, and I see that.  And there's no doubt that he has, and I'm sure he is sorry about it.  And all of us have to pay the price for the things we do wrong, and we all do them.

But I tend to agree, he does need help.  He needs help.  A lot of people now are getting help.  We see it everywhere.  I don't think he deserves any less.  I think he needs help.  Thank you for listening to me.

THE COURT:  Thank you.

UNIDENTIFIED SPEAKER:  Hi, Your Honor.  I'm his nephew.  I've been close to my uncle since I was born.  I know he's been in trouble, and he's taught me how not -- he's taught me not to follow in his path and not to do those decisions and

not to do wrong. And he's been -- he's been like a brother to me that I never had, and he's been there for me to talk to me about my problems. And he's just really -- he's really kind.

He doesn't -- he just doesn't -- he has these kids, and he wants to take care of them so bad. And I see -- I've seen him with them. I don't want to see him lose them. Can I give you these photos?

THE COURT: Thank you.

MR. BROWNING: Your Honor, he's just handed me several photographs of Mr. Malmquist and his family. Can I tender those to the Court, Your Honor .

THE COURT: You may. The court will consider those photographs in.

You may proceed.

MS. MALMQUIST: Hi, I'm Lauren Malmquist. I am Shawn's older sister. The purpose of this letter is to tell you a little bit oh about Shawn as of today.

I have known my brother for the 32 years of his life. He's the only sibling I have. We were born with the same parents, Rhonda Moe and John Malmquist. Growing up, our parents went through a 12-year custody battle. My mom suffered from mental illness, and she was an alcoholic.

We -- I just -- Shawn graduated high school once we got away from my mom's house, and my brother found out he was going to have a baby in 2011. He got the news that his unborn

child would not make it into this world.  And once the news of his first child's death, that's when I noticed the change in my brother.  He never got the mental help or the healing he needed at that time, and that's when he started to get in trouble.

Now I would like to talk about my brother today.  In conversations between my brother and I, we have talked over about him accepting responsibility as of today.  We have also talked about when he would get out, what he would do to make a change.  He has a lot of kids that really love him, and he's good with kids.  And so we had talked about him trying to work with programs that would get kids off of drugs after he completes his sentencing.

But before my brother can even get to help others or even do that -- to that point, he needs to make -- sorry.

But before my brother can get to that point, trying to make a change in today's youth, he must first work on healing and fixing the hurt damage that's inside of him.  The mother that left us when we were kids, she never came back into our lives.  The only time we got to hold his first child was the last time he got to hold his first child.

We do have a father that loves us, and our father is what keeps our family together.  Shawn now has a son, and I have never seen a father more involved in a son's life than I have my brother.  Me son loves -- I mean, my brother -- yeah.  My son loves his uncle more than anything, and they are

inseparable.

One of my biggest fears for today's sentencing is that, due to my father's health, he won't be able to live out that long of a sentence. My second biggest fear, due to the high gang violence in prison, when you look at my brother today, I don't want you to think of him as a -- as a bad man. I want you to also see that there is good in him. He's a loving father, uncle, son, and brother.

The character -- and I don't know if it's possible, but if there's a way to get him help, my brother deeply needs the help. And that's it.

THE COURT: Thank you.

Seeing no one else, please come back forward.

Mr. Malmquist, Mr. Browning, if either or both of you have anything you would like to say in addition to what you've already said or in response to what's been said by anyone else, I'll hear from you.

MR. BROWNING: Your Honor, I would ask that, in terms -- I know that recommendations are not binding on the BOP, but I would ask that, whatever sentence you give him, that you recommend that he be placed somewhere where drug treatment and vocational and educational treatment is available. It's my understanding that they tend to try to listen to those, and we would rather have more options available than so much being near the family. I would ask for that. And then I would ask

for the lowest -- lowest end of the guidelines that the Court could consider.

THE COURT:  Mr. Malmquist, anything further, personally?

THE DEFENDANT:  No, sir.  No, sir.  That's it.

MR. BROWNING:  And just, Your Honor, I think I've said this earlier.  But he currently has a pending case in Williamson County.  We don't know what's going to happen with that and would ask that this sentence run concurrent with whatever happens in Williamson County.

THE COURT:  The court has read and reviewed the presentence investigation report, and I accept and adopt that report.  I've dealt with objections to that report, and I find the correct total offense level is 30, the defendant's correct criminal history category is 6, and the correct guideline range is a term of incarceration of 168 to 210 months.

In addition, I have carefully reviewed the plea agreement in this case.  As has been mentioned, I have previously sentenced 20 of the defendants in this indictment that originally contained 33 defendants.  I have heard a lot about this case and read a lot about this case and its wide-ranging drug distribution, almost a cartel, it was so big. And so I take all of that into account.  I've also heard the statement from the defendant which was read to me and the statements that have been made by his father, stepmother,

nephew, and his sister.  And I've reviewed the family photographs that were submitted to me.  And because they're originals, Ms. Oakes, I'll pass them back so the family may retain them.  And I've heard what the lawyers have had to say.

Here's where we are:  I cannot overstate how serious this drug trafficking organization was.  It extended at least as far as Maryland.  Every drug trafficking organization relies on any number of people to make it work, and it's easy when you don't look at it in its entire context to say, well, we can pick out this person and we can pick out that person.

You can't do that.  It works because of everybody that's involved.  Mr. Malmquist, I'm aware of your background and what you've been through, but I've also looked at your previous criminal history.  And it's lengthy.  This time you got yourself into a really bad deal with this drug trafficking organization.  And then when you were given a chance where you could have gotten some time down under the guidelines for acceptance of responsibility, you violated that.

I'm willing to accept the fact that it was due to your drug addiction, because I think you have an extreme drug addiction.  But it in no way lessens your involvement in this case, because many people involved in this case had drug addictions.

I'm not going to credit the time you spent in Williamson County because of this court's policy to credit time

against a sentence only when it was continuous to that sentence. So if you'd stayed in jail all the way through, you would have had time back to that. So that's yet another penalty you're suffering because you couldn't make good on what you represented to the magistrate judge when she released you.

Mr. Browning has mentioned average sentencings. Well, it doesn't really work that way. As I said, I've previously sentenced 20 people in this case. Their sentences are all based on a whole variety of things, which include their individual criminal histories, their individual involvement in various parts of this, when they came forward and debriefed, and a whole variety of things. So the court cannot and will not take in a multidefendant indictment involving a serious drug trafficking organization like this one an average and say that works.

Although I am obligated under Title 18 of United States Code, Section 3553, to fashion, one of the factors is, a sentence that avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The court believes two things: Number one, from what I've heard here today, you've hurt your family worse than yourselves by what you're doing with your addiction. I've heard good things about you. But you don't keep them up consistently. Further, though, I find that the difference

between what guidelines would have come up with had you satisfied your pretrial release and gotten credit for acceptance of responsibility and the guidelines that we're applying today is more harsh than it needs to be.  It was too great a penalty there.

When I compare you with all of the other people that I've sentenced and all of the other people whose roles in this drug trafficking conspiracy I know of, I'm going to exercise my discretion under Title 18 of the United States Code, Section 3553, particularly taking into effect what I just said, and render a sentence that is somewhat below the guideline range, which I think is more accurate with regard to other people that I've sentenced in this case in an attempt to balance everybody out, and what is more of an appropriate penalty because of your violation of your terms of pretrial release.

I find that a guideline sentence with that adjustment would be a sentence that is tailored to meet your background and the crime for which you have been convicted; that it adequately accounts for all of the factors in Title 18 of the United States Code, Section 3553, all of which I've considered but only a couple that I've mentioned; and that it is a reasonable sentence to impose in this case.

Therefore, pursuant to the Sentencing Reform Act of 1948, it is the judgment of this court that you,

Shawn Malmquist, are hereby committed to the custody of the Bureau of Prisons for a term of 151 months.

It is my recommendation to the Bureau of Prisons that you be placed in a facility where you can have access to the RDAP program.  That's the Residential Drug Abuse Treatment Program.  It is the 5-hour -- 100-hour intensive program that, if you satisfactorily complete it, it can work off some of your time.  You have to ask for it.  It's not automatic.  So I strongly urge that, when you're placed in a facility, you inquire about the RDAP program and you request it.

If for any reason the Bureau of Prisons cannot accommodate you in a facility with the RDAP program, it is my recommendation that the Bureau place you in a facility that has drug treatment facilities, and I urge you to ask when you are assigned that you be placed in the most intensive drug treatment program and counseling program they have at the facility to which you are assigned.

Also, they don't automatically pass out vocational instruction, so I urge you that in whatever unit you are assigned to that you request vocational training.

Upon release from imprisonment, you shall be placed on supervised release for a term of four years.

Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you are released.

Also it is my order that the sentence that I have just imposed, the 151 months, run concurrent to any state sentence that you receive arising out of Williamson County.

But back to your supervised release, while on supervised release, you shall not commit another federal, state, or local crime, and you shall comply with the mandatory standard conditions adopted by this court on November 28, 2016 which include, in part:

You shall participate in a substance abuse treatment program and follow the rules and regulations of that program. The program may include testing and examination during and after program completion to determine if you have reverted to the use of drugs or alcohol.  A probation officer may supervise your participation in the program, and you shall pay the costs of the program and any treatment to the extent you're financially able.  During your term of supervision, you shall abstain from the use of alcohol and all over intoxicants.

You shall submit your person, property, house, residence, office, vehicle, papers, computers as defined in Title 18 of the United States Code, Section 1030(e)(1), and all other electronic communications or data storage devices or media to a search conducted by a United States probation officer.  Your failure to submit to such a search may be grounds for revocation of your release.

You shall warn any other occupant of any premises you

occupy that those premises may be subject to searches pursuant to this condition.  A probation officer may conduct a search under this condition when a reasonable suspicion exists that you have violated a condition of your supervision.  Any search must be conducted at a reasonable time and in a reasonable manner.

I find that you do not have the ability to pay a fine; I will waive the fine in this case.  However, it is further ordered that you shall pay to the United States a special mandatory assessment of $100 which shall be due immediately.

Since you are currently in federal custody, voluntary surrender is not an issue.

Mr. Malmquist, at this time I am handing to the clerk of this court the presentence investigation report prepared by the probation department in this case and to which we have referred during this proceeding.  I'm ordering that that report be sealed.  That means that no one may come to the district clerk's office and read about you and any member of your family or any of the facts and circumstances surrounding the offense for which you have been convicted and sentenced today.

However, I wish to advise you that if there is an appeal from the sentence that I have just imposed, both you and the government may use your copies of the presentence investigation report for purposes of appeal, and in that event

the presentence investigation report will become part of the record on appeal.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Pursuant to the terms of your plea agreement, you have waived your right to appeal the sentence that I have just imposed except under certain circumstances set forth in that agreement.  In a moment I will be passing to you and your lawyer letters that more fully explain that.

However, I wish to tell you at this time that if for any reason you desire to appeal the sentence that I have just imposed or if for any reason you feel you have a right to appeal that sentence, you may only do so if you first file with the clerk of this court within 14 days a written Notice of Appeal.  That's a written document called a "Notice of Appeal."

If you do not file such a written notice of appeal with the clerk of this court within 14 days, you can never appeal the sentence that I have just imposed and you will forever waive your right to appeal that sentence.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  At this time I'm passing to you and your lawyer letters to that effect.

Is there anything further to come before the court in this case at this time?

MR. GUESS:  No, Your Honor.

32

MR. BROWNING:  Nothing from us, Your Honor.

THE COURT:  Then at this time the court dismisses any pending motions on which the court has not ruled.

You are excused.  Good luck to you, Mr. Malmquist.

(End of transcript)

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

**UNITED STATES DISTRICT COURT      )**

**WESTERN DISTRICT OF TEXAS          )**

     I, Arlinda Rodriguez, Official Court Reporter, United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

     I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

     WITNESS MY OFFICIAL HAND this the 7th day of December 2022.


                                        /S/ Arlinda Rodriguez
                                        Arlinda Rodriguez, Texas CSR 7753
                                        Expiration Date:  10/31/2023
                                        Official Court Reporter
                                        United States District Court
                                        Austin Division
                                        501 West 5th Street, Suite 4152
                                        Austin, Texas 78701
                                        (512) 391-8791