**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNITED STATES OF AMERICA,                    ) AU:21-CR-00048-LY-12
                                             )
    Plaintiff,                               )
                                             )
v.                                           ) AUSTIN, TEXAS
                                             )
SHAWN MALMQUIST,                             )
                                             )
    Defendant.                               ) APRIL 28, 2021

            ************************************************
            TRANSCRIPT OF ARRAIGNMENT AND DETENTION HEARING
                 BEFORE THE HONORABLE SUSAN HIGHTOWER
            ************************************************

APPEARANCES:

FOR THE PLAINTIFF:    DANIEL D. GUESS
                      UNITED STATES ATTORNEY'S OFFICE
                      903 SAN JACINTO BOULEVARD, SUITE 334
                      AUSTIN, TEXAS 78701

FOR THE DEFENDANT:    WILLIAM J. BROWNING
                      LAW OFFICE OF WILLIAM J. BROWNING
                      1101 WEST 34TH STREET, SUITE 139
                      AUSTIN, TEXAS 78705

TRANSCRIBER:          ARLINDA RODRIGUEZ, CSR
                      501 WEST 5TH STREET, SUITE 4152
                      AUSTIN, TEXAS 78701
                      (512) 391-8791

Proceedings recorded by electronic sound recording, transcript

produced by computer.

**EXAMINATION INDEX**

LAUREN MALMQUIST
      DIRECT BY MR. BROWNING . . . . . . . . . . . . . . . . . . 8
      CROSS BY MR. GUESS . . . . . . . . . . . . . . . . . . . 12

(Proceedings began at 10:02 a.m.)

THE CLERK:  Court is now in session for an arraignment and detention hearing: 21-CR-48, *United States v. Defendant Number 12, Shawn Malmquist.*

MR. GUESS:  Dan Guess for the United States, Your Honor.

MR. BROWNING:  William Browning for Mr. Malmquist, Your Honor.

THE COURT:  Good morning.  And, Mr. Browning, I understand that you'd like to orally waive the arraignment this morning for Mr. Malmquist?

MR. BROWNING:  That is correct, Your Honor.

THE COURT:  Okay.  A plea of not guilty will be entered on Mr. Malmquist's behalf.

So we'll be proceeding with our hearing on the government's motion to detain Mr. Malmquist pending trial.  And we're proceeding by video conference today due to the COVID-19 pandemic.  Mr. Malmquist, if we were to try to proceed in person, it could present a serious health risk to you, to the attorneys and court staff involved, and to the other detainees.

I'll ask first, Mr. Malmquist:  Have you discussed the issue of proceeding with your hearing by video conference with Mr. Browning?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you consent to proceed by video?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And, Mr. Browning, do you also consent to proceed with the detention hearing by video?

MR. BROWNING:  Yes, I do, Your Honor.

THE COURT:  And, Mr. Guess, on behalf of the government?

MR. GUESS:  Yes, Your Honor.

THE COURT:  So I find that both parties consent to proceed with the detention hearing by video conference.

I also need to remind counsel that, as required by Rule 5(f), the United States is ordered to produce all exculpatory evidence to the defendant pursuant to *Brady v. Maryland* and its progeny.  Not doing so in a timely manner may result in sanctions, including exclusion of evidence, adverse jury instructions, dismissal of charges, and contempt proceedings.

So at this time I'll ask Mr. Guess how he intends to proceed.

MR. BROWNING:  Your Honor, we're going to rely upon the presumption, that is, pursuant to the charge against Mr. Malmquist.  We'd also ask the Court to take acknowledgment of the pretrial services report regarding his criminal history.  And based on those two factors, the government believes that there are no conditions that could be set that would ensure the safety of community or the appearance of Mr. Malmquist.

THE COURT:  Okay.  Thank you, Mr. Guess.  So Mr. Browning?

MR. BROWNING:  Your Honor, I would want to say before I get started, I do have Lauren Malmquist here.  I do want to bring to the Court's attention and for the matters of the record, I had emailed Ms. Cano yesterday, and I believe that she has verified that there is no longer a blue warrant or a parole hold on Mr. Malmquist.  I don't think that the report reflects that, but I would like to direct the Court's attention to that.

THE COURT:  I -- that's my understanding as well.  But Ms. Cano is -- is present here, although her video is off, which is -- which is acceptable to the Court.  I'll just ask her if she can unmute and confirm.

MS. CANO:  Yes, ma'am.  I spoke with the State parole office yesterday, and they confirmed that, as Mr. Malmquist has been taken into federal custody, they determined -- they calculated his sentence and determined they should pull the warrant and discharge him from parole, as his time would have expired during this process.

THE COURT:  Okay.  Thank you very much, Ms. Cano, and thank you for pointing that out, Mr. Browning.

MR. BROWNING:  And, Your Honor, I may -- I don't want to procedurally get myself in a bind, but there is another issue in the pretrial report that I would dispute.  And so I

may want to call Ms. Cano.  Don't know how the Court wants --
I'm not trying to be cute or anything, Your Honor.  But I
looked up Mr. Malmquist's Williamson County case, and the
Williamson County website shows it was dismissed.

THE COURT:  Let's just be clear on that, because I
think he has a couple that I'm seeing from Williamson County.
Is that the 2012 case or a different one?

MR. BROWNING:  There's a 2020 case that's on page 6,
Your Honor, and it says:  Remains pending, basis of instant
offense.  As an officer of the court -- and I can email the
screenshot around that the Williamson County website shows that
that case was dismissed.

THE COURT:  And that's the one listed on May 26th as
the Round Rock Police Department?

MR. BROWNING:  Yes, Your Honor.

THE COURT:  Okay.

MR. GUESS:  Your Honor, if I may?

THE COURT:  Mr. Guess.

MR. GUESS:  The State prosecutor had contacted me
regarding those cases.  They were certainly part of the federal
charge that he was going to be facing.  So, in lieu of the
federal prosecution, the assistant DA in Williamson County did
inform me that they intended to dismiss those cases.

So it sounds -- I'll agree where with Mr. Browning
that those cases are no longer intended to be prosecuted by

Williamson County; that they'll be subsumed by the federal case instead.

MR. BROWNING:  Okay.

THE COURT:  And that is only the May 26th, 2020 delivery of a controlled substance case, correct?

MR. GUESS:  The May and the June.  I think there was a June.

THE COURT:  There's a June 12th.  This says listed as DPS Austin.  And so the prosecutor rejected the charge, and it's the basis of the instant offense.

MR. GUESS:  That's -- exactly.  Both of those case were relevant to the federal prosecution, Your Honor.

THE COURT:  Okay.  So that's accurate as to the June 12th, but the update is that the May 26th state charge has been dismissed based on the federal prosecution.  Am I understanding that correctly?

MR. GUESS:  Yes, Your Honor.

MR. BROWNING:  Yes.

THE COURT:  Okay.  Thanks to you both.

MR. BROWNING:  Yes, Your Honor.  I just want to make it very clear to the Court that he has no -- he does not have any pending charges, is my -- was my goal in all that.  And I apologize if I kind of did that out of order.

THE COURT:  No.  That's certainly fine.  It's good to -- usually our pretrial services reports are quite accurate

and I rely on them. So I'm glad to hear if there's been an update. So thank you. You can proceed further as to any proffer of evidence you may wish to offer, Mr. Browning.

MR. BROWNING: Well, Your Honor, rather than proffering it, I would like to call Ms. Malmquist to just briefly lay out her situation and what I'll ask for as to Mr. Malmquist, if I may?

THE COURT: Certainly. And so I'll ask Ms. Malmquist to unmute and Mr. Ferrell to please administer the oath.

(Witness sworn)

MR. BROWNING: Your Honor, may I proceed?

THE COURT: Yes, you may.

**LAUREN MALMQUIST,**

having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

**BY MR. BROWNING:**

Q. Ma'am, would you state your name for the record and spell your last name, please.

A. My name is Lauren Michelle Malmquist, and my last name is spelled M-a-l-m-q-u-i-s-t.

Q. Okay. And how do you know Shawn Malmquist?

A. He's my brother, my only brother.

Q. He's your only brother?

A. Yes.

Q. Are you older or younger than he is?

A.   I'm older.

Q.   Okay.  And how -- how -- it's always a rude question to ask people, but how old are you, ma'am.

A.   I'm 32.

Q.   Okay.  And what do you do for a living?

A.   I was a manager at Goodwill.  And due to the COVID and everything, right now I'm just a stay-at-home mother.

Q.   Okay.  So, like a lot of people, when the pandemic hit, you kind of lost your job?

A.   Correct.

Q.   Okay.  But you do have your own place to live right now?

A.   I do.

Q.   Okay.  And, just for the record, what is that address?

A.   It's 901 Hidden Valley Drive, Round Rock, Texas 78665.

Q.   Okay.

A.   And Apartment 11106.

Q.   Okay.  And who do you live with?

A.   It's just my son and I.

Q.   Okay.  And how old is your son?

A.   He is 15, almost 16.

Q.   Okay.  And do you have any criminal record whatsoever, ma'am?

A.   No.

Q.   Okay.  And I think you said yesterday kind of you're a full-time mom and you're also full-time looking for work.  Is

that your plan?

A.   Correct.  And I do clean houses and stuff like that as well, so ...

Q.   Okay.  So -- but, I mean, judging by the kind of the Zoom video, you seem to have a nicely decorated place to live.  And so you've got a roof over your head.  Do you have your own vehicle?

A.   Yes.

Q.   Okay.  As far as you know, when your brother was arrested, was he employed?

A.   I think he was.  But, honestly, I don't remember.  I didn't see him every day then.

Q.   Okay.  Has he worked for your family before?

A.   Yes.  He's worked for my dad.  He always has a job with my dad.

Q.   Okay.  And what is your dad's job?  What does your dad do?

A.   He currently -- he's had his own construction company for a long time.  Previous to that, he was a sheriff.

Q.   Where was he a sheriff?

A.   He was a police officer, yeah.

Q.   Where?

A.   He was a police officer in Williamson County when we were younger.  And so he got custody of my brother and I, and so he -- in order to have more time with us, he had to leave being a police officer and he did his own construction company.

Q.   Okay.  And what -- and so Malmquist Construction, is that -- is that like commercial, like building, like, warehouses or is it residential, like building, like, homes?

A.   It's more -- well, he gets a lot of bids, actually, from Williamson County courts and stuff like that.  It just depends.  He does both.  So he does commercial and houses.

Q.   Okay.

A.   Go ahead.

Q.   I'm sorry.  And your -- your brother has worked for your dad before?

A.   Oh, correct.  Yes.

Q.   Okay.  And if your brother was released on some type of pretrial conditions, would he be able to go back to work for your father?

A.   Yes.

Q.   Okay.  Could he stay at your house?

A.   Yes.

Q.   Would you be willing to ensure that he abide by any conditions that the court set?

A.   Yes.

Q.   I think we sometimes call it like a responsible third party or third-party custodian.  Would you be willing to promise the Court that you would get him to court dates?

A.   Yes.

Q.   Would you be willing to promise the Court that, if he

violated bond conditions, which could include house arrest or abstaining from drug abuse, abstaining from contact with codefendants, things like that, would you be willing to call the Court or call the federal pretrial office and say that he was violating his conditions?

A.   Yes.

Q.   Okay.  And do you believe -- obviously, you've known your brother your whole life.  Do you believe that he will return to court?

A.   Yes.  I don't think he's ever had a problem going to court.

Q.   Okay.  And would you do anything you could to ensure that he returns to court?

A.   Yes.

Q.   Okay.

          MR. BROWNING:  Your Honor, I pass the witness at this time.

          THE COURT:  Thank you.  Mr. Guess, do you have any questions for Ms. Malmquist?

          MR. GUESS:  Just a couple, Your Honor.

                        **CROSS-EXAMINATION**

**BY MR. GUESS:**

Q.   Ms. Malmquist, you're familiar with your brother's criminal history; is that correct?

A.   Yes.

Q.   And he's had problems since he's been 13 years old; is that right?

A.   I -- I would say yes.  But I -- I know my brother.  And so, honestly, I just think if you know him enough, like he actually lost a baby.  And so once he did lose the baby, that's whenever his criminal history got worse.

Q.   Well, he certainly didn't have a baby when he was 13 years old, did he?

A.   No.  But we had a bad childhood.

Q.   Okay.  So, despite the fact that he's had lots of criminal problems, he's had run-ins with the law consistently, and he's been given terms of probation before, hasn't he?

A.   He has completed probation, yes.

Q.   But he's also violated terms of probation, hasn't he?

A.   I can't remember.

Q.   Wouldn't surprise you that he violated those conditions of probation, would you?

A.   To be honest, I mean, yeah, it would, because I don't -- I know he has gotten in trouble.  But as far as violating something when he's already on trouble, I don't know.

Q.   So you knew he was on parole for a state prison offense; is that right?

A.   Just for -- oh.  When he got in -- when he got in trouble again?  Yes.

Q.   And yet, despite the fact that he was on parole but he had

conditions, that he had people out there who were checking on him and helping him, he still continued to commit criminal violations, didn't he?

A.   I don't think he had people checking on him and ...

Q.   So the state parole system doesn't -- they just say, Go out and do your own thing, Shawn.  They don't ever check on him?  That's your -- that's your belief?

A.   I wasn't there whenever they did check on him.

Q.   Were you aware that, in June of 2020, he was caught with over a kilogram of methamphetamine?

A.   I saw the police report.

Q.   Did you -- were you aware at that time, since you're so close to your brother, that he was deal dealing in drugs?

A.   No.  Not at all.

          MR. GUESS:  I've got no further questions, Your Honor.

          THE COURT:  Thank you.  Mr. Browning, any further questions?

          MR. BROWNING:  Your Honor, I have no further questions, and I have no -- no more witnesses.

          THE COURT:  Thank you.  Ms. Malmquist, I just have a question for you.  Has your brother ever lived with you before as an adult?

          THE WITNESS:  No, he has not.

          THE COURT:  So you've never served as a custodian for

him in his previous periods of release?

THE WITNESS:  No.

THE COURT:  Okay.  Thank you.  That's really my only question for you, Ms. Malmquist.

And you may be excused, and you can mute.  And same thing, you can leave your camera on or off as you -- as you prefer.  But I'd ask that you stay connected to the Zoom call for now.

THE WITNESS:  Thank you.

THE COURT:  Okay.  Thank you.

And I did just want to ask -- I had a couple of questions.  I don't know if you have any additional information about this, Mr. Browning.  I was looking back to some old charges for the assault family violence from 2012.  Is there any further information that's known about that?

MR. BROWNING:  Not -- no, Your Honor.  I don't have any further information.  I -- I do -- I would note that it was reduced down to a class A misdemeanor.

THE COURT:  Okay.  And my main issue, of course, is who -- that's obviously nine years ago, but who the victim was and whether that's a victim with whom the defendant still has a relationship.

MR. BROWNING:  That -- that I do not know, Your Honor.  I do not know.

THE COURT:  Okay.

MR. BROWNING:  I -- Ms. -- Ms. Malmquist may know. But I don't know -- I do not know -- I do not think that that -- it's my understanding that Mr. Malmquist is in a relationship with a Cassandra Garcia.  And I don't know if that's who the complaining witness was in that case or not.

THE COURT:  Okay.  We can recall Ms. Malmquist. You're still under oath.  You're indicating that the victim -- to the extent you know, which I understand you're not involved with the law enforcement system, Ms. Malmquist.  But, if you want to unmute and just mention -- you're indicating that the victim in that 2012 case was not Cassandra Garcia?

THE WITNESS:  Correct.  No, it was not Cassandra. And Shawn does not have contact with her -- with the person who was involved in that.  But I had thought that it said that that case was dropped on the WilCo website.  Maybe I'm wrong.

THE COURT:  Actually -- well, and that's -- and, again, I'm not expecting you to testify as to the legal issues, Ms. Malmquist.  But it does -- my indication is that Mr. Malmquist pled guilty and served eight days incarceration for that offense.

That was really my only question for you, Mr. Browning.  So, to the extent, since you have no other witness, I'll ask Mr. Guess then if you'd like to make any -- and once again, Ms. Malmquist, you're permitted to mute and turn off the camera if you prefer.

So, Mr. Guess, I'll ask if you have any argument you'd like to make.

MR. GUESS:  Briefly, Your Honor.  Mr. Malmquist has been given plenty of opportunity to comply with conditions of probation and parole.  And yet each time he's let out, he commits another offense.  In this particular case, he continues to graduate to more serious crimes.  In this particular case in June, as mentioned during the cross-examination, he was caught with over a kilo of methamphetamine that he obtained directly from the source of supply in this case Karl Beck.

At the bottom -- at the end of the day, he has a felon in possession of a firearm case, as you noted, he has a family violence association, and he has multiple drug cases. Based on his criminal history, based on what we hear now, I don't believe that Mr. Malmquist is a good candidate for release, and I'd ask that he be detained pending trial.

THE COURT:  Thank you, Mr. Guess.  Mr. Browning do you have any argument?

MR. BROWNING:  Your Honor, Mr. Malmquist's criminal history is there for all of us to see.  But the issue is whether he is guilty of what he's -- the current charges that he's facing.  And while I understand that, obviously, Mr. Guess believes that he is, he is innocent before the Court as he sits here today.  And I believe that the Court can set conditions

that will ensure that he will return to court and that will ensure the safety of the community.

And that -- I think that Ms. Malmquist's testimony has rebutted the -- the government's presumption -- the presumption.  And I think that the Court can allow him to live at her house with some type of monitoring.  And I think she is a responsible person and will ensure that he comes to court. And I believe that we would ask the Court to release him to, essentially, the custody of Lauren Malmquist while these charges are pending.

THE COURT:  And, Mr. Browning, in fact, I do have one more question for you.  And this is one that, if you are not sure of the answer, I can direct to your client.  My indication is that Mr. Malmquist has been incarcerated since June of 2019 and that he was using methamphetamine daily as well as cannabinoids.  This was 10 months ago, so I'm not sure if that was at the time of his arrest.  My question is whether Mr. Malmquist would be amenable to inpatient treatment for substance abuse.

MR. BROWNING:  Your Honor, he would.  We've discussed this.  He -- for the record, he's shaking his head up and down that he would be, Your Honor.  And he has been in custody since the arrest date.  He has been in custody almost over -- I believe over a year.  So he was in -- he was transferred to federal custody, I believe, from the Williamson County jail.

THE COURT:  Okay.  And -- I asked whether he would be amenable.  Does he feel that he would benefit from substance abuse treatment at this stage?

MR. BROWNING:  I believe that he would, Your Honor. Mr. Malmquist, do you -- do you think you would benefit from substance abuse treatment?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Thank you.  Anything further, Mr. Browning?

MR. BROWNING:  No, Your Honor.

THE COURT:  And Mr. Guess?

MR. GUESS:  No, Your Honor.

THE COURT:  Okay.  Thanks very much to everyone, and the court will take a brief recess while I discuss with pretrial services.

(Recess from 10:22 to 10:32 a.m.)

THE COURT:  I do apologize in case you hear anything. There seems to be some sort of alarm beeping here, if you hear that.  Hopefully I'm not needing to evacuate or anything, but I don't intend to at this time.

So I'll tell you, Mr. Malmquist, when I came in, I was quite ready to order your detention pending trial.  And I'll tell you what concerns me about your history, Mr. Malmquist, is that, essentially, the -- the gaps in your criminal history are only when you've been incarcerated in the

past.  You continue to commit offenses while on parole, and you did have, in addition to the family violence conviction that we talked about, you had at one point pled guilty to unlawful possession of a firearm by a felon.

But those -- there's all been some period of time that's gone by through those, and I think, Mr. Malmquist, I do think that there are conditions that could let you be successful on pretrial release if you're willing to take advantage of them.

So this is what I would propose to do, and then I want to hear from you, Mr. Malmquist.  Your -- as far as I can see sitting here, you're very fortunate to have a sister who is so interested in your welfare.  And what I would propose to do, we'll keep you detained until a treatment bed becomes available, and then we'll order you inpatient substance abuse treatment.  And then at that time you could be released to the custody of your sister.  And so we'll need some time -- pretrial services will need some time to research Ms. Malmquist, make sure that everything is -- is in order with her as your custodian.

Usually there has been -- lately there has been about a week, one- to two-week delay, I would just ballpark, in getting a treatment bed available.  But that's something we won't know until we specifically call.  It varies for men and women, I think, so we'll find that out.  And we also need to

talk to your dad and make sure that you could continue working -- that you could work for him again.

So I think this is something, given your track record, Mr. Malmquist, I'd like to hear from you.  If we ordered you to live with your sister, to work for your dad, and be on an overnight curfew where you were at her house from 10:00 p.m. to 6:00 a.m., there could absolutely be no use, no possession of any drugs, no possession of any firearms, is that something that you believe you can do and be successful with, Mr. Malmquist?

THE DEFENDANT:  Yes, ma'am.  I'll do whatever you-all ask.

THE COURT:  Okay.  And do you -- are you interested -- and we went over this a little bit before the recess.  But do you believe that an inpatient substance abuse treatment, is that something you're willing to commit to, and do you believe it will be helpful to you going forward?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  All right.  Thank you very much.

So I think then that's what we'll do.  We'll need to continue our hearing until we can get the additional -- additional information that pretrial needs to do.  And when we have a date that a bed's become available, then we'll reconvene, and I'll go over the conditions of release with you, Mr. Malmquist, assuming everything checks out with the -- with

the plan as we've outlined it now.  So that would mean, then, you'd be released to treatment and then to your sister's custody.

So with that granted, we'll be recessing or continuing rather than adjourning, is there anything else that the government would like to put on the record at this time?

MR. GUESS:  No, Your Honor.

THE COURT:  Okay.  Thank you, Mr. Guess.  And you're certainly welcome to attend when we reconvene the hearing, but you won't have to.

Mr. Browning, is there anything further that you'd like us to address at this time?

MR. BROWNING:  How can I -- should I -- Ms. Cano, do you want me to email you Ms. Malmquist's contact information?  Or how -- how can I facilitate the process.

MS. CANO:  I have Ms. Malmquist's and her father's contact information, so I will be giving her a call this afternoon.

THE COURT:  If you could hold on for just one second, I have the court security.  And let me just mute for a second.

That has -- thank's for your patience.  That was related to the alarm that was going off, so they're checking it out.  It seems to be fine.

But yeah.  I think so you -- you got the -- you've got the instructions for communicating with Ms. Cano,

Mr. Browning?

MR. BROWNING:  Yes.  Yes Your Honor.

THE COURT:  And, Ms. Malmquist, I think you'll be in further -- further discussions with Ms. Cano as well.

So anything further that we need to address, Mr. Ferrell?

THE CLERK:  No, Your Honor.

THE COURT:  Okay.  Thanks to everyone, and I look forward to reconvening in the next week or two, when we have a firm plan.

MR. BROWNING:  Excellent.  Thank you, Your Honor.

THE COURT:  Thank you.  We're recessed.

(Proceedings concluded at 10:38 a.m.)

**REPORTER'S CERTIFICATE**

I, Arlinda Rodriguez, do hereby certify that the foregoing was transcribed from an electronic recording made at the time of the aforesaid proceedings and is a correct transcript, to the best of my ability, made from the proceedings in the above-entitled matter, and that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.


/S/ Arlinda Rodriguez                    April 13, 2023

ARLINDA RODRIGUEZ                         DATE

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)