**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNITED STATES OF AMERICA,                ) AU:21-CR-00048-LY-12
                                         )
    Plaintiff,                           )
                                         )
v.                                       ) AUSTIN, TEXAS
                                         )
SHAWN MALMQUIST,                         )
                                         )
    Defendant.                           ) MAY 21, 2021

        *********************************************
        TRANSCRIPT OF CONCLUSION OF DETENTION HEARING
            BEFORE THE HONORABLE SUSAN HIGHTOWER
        *********************************************

APPEARANCES:

FOR THE PLAINTIFF:    DANIEL D. GUESS
                      UNITED STATES ATTORNEY'S OFFICE
                      903 SAN JACINTO BOULEVARD, SUITE 334
                      AUSTIN, TEXAS 78701

FOR THE DEFENDANT:    WILLIAM J. BROWNING
                      LAW OFFICE OF WILLIAM J. BROWNING
                      1101 WEST 34TH STREET, SUITE 139
                      AUSTIN, TEXAS 78705

TRANSCRIBER:          ARLINDA RODRIGUEZ, CSR
                      501 WEST 5TH STREET, SUITE 4152
                      AUSTIN, TEXAS 78701
                      (512) 391-8791

Proceedings recorded by electronic sound recording, transcript

produced by computer.

(Proceedings began at 12:59 p.m.)

THE CLERK:  Court is now in session for a detention hearing: 21-CR-48, *United States v. defendant Number 12, Shawn Malmquist*.

MR. GUESS:  Dan Guess for the government, Your Honor.

MR. BROWNING:  William Browning for Mr. Malmquist.

THE COURT:  Thanks to everyone for being here today. And I believe that when we continued the hearing -- the detention hearing for Mr. Malmquist, we were giving time to let pretrial investigate and see whether Ms. Malmquist -- Lauren, your last name is Malmquist, correct, as well?

MS. MALMQUIST:  (Nods).

THE COURT:  She's indicating yes.

And determine whether she would be a suitable custodian and has determined that she would be.  And so with that having happened, I find that there are conditions of release that can ensure the safety of the community and the appearance of Defendant as required and am prepared to go through those today with Mr. Malmquist.

And, first of all, I wanted to start out by saying that we're very pleased, Mr. Malmquist, that there's a treatment bed that's become available for you, and that starts on the 27th.  So what I'm saying today will sort of carry over into the future release into treatment.

And I'll go through the conditions with you one by

one.  But, Mr. Guess, did you want to -- did you want to remain for those conditions, or is there anything that you wanted to be heard on before we start with that portion of the hearing?

MR. GUESS:  No, Your Honor.  If it's permissible with the Court, I'd like to be excused from the rest of the hearing, then.

THE COURT:  Certainly you may be.  Thank you for coming today, Mr. Guess.

MR. GUESS:  Thank you, Judge.

THE COURT:  Okay.  Thank you.

MR. BROWNING:  Bye Dan.

THE COURT:  So, Mr. Malmquist, I'll just start out by letting you know the conditions -- you know, as I mentioned, we're very pleased that we were able to do this.  And I hope -- and sincerely hope that you're able to take advantage of the inpatient treatment.  And this will be -- this will be your first time for that; is that correct, Mr. Malmquist?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Thank you, sir.  Well, I've seen several people who have gone through the treatment and have been released in the last couple of days and have heard great reports from them.  You know, they've all been very willing to comply, they've been successful in their inpatient treatment, and have heard a lot of the -- a lot of them say that it's turned their life around and given them a whole new start.

And I think a lot of it, Mr. Malmquist, will depend on the attitude that you go into it with.  I'm sure it won't always be easy.  But if you can see it in that light, I think that it's going to definitely ensure your success or give you a much, much greater chance of success both in the treatment program and completing that and abiding by your conditions of release.

So I'll start out, Mr. Malmquist, by letting you know how important it is that you do so.  And I want to review with you first what happens if you violate any of the conditions of your release, because the consequences, sir, can be extremely severe.

If you violate any of the conditions of your bond, a warrant can be issued for your arrest and you can be placed into jail.  If you fail to appear for court as required, that's a separate criminal offense that can be punishable by up to 15 years in prison stacked on top of any prison term you receive for the underlying offense.  If you commit another offense while on release, that's a new federal offense punishable by 10 years in prison, stacked.  And it's also a federal crime to contact any witnesses, jurors, prosecutors or to otherwise tamper with evidence or obstruct justice.

And, in addition to all of those potential statutes, I want to let you know, Mr. Malmquist, that the district court, when it comes time for Judge Yeakel to sentence you, it can be

significant to him how well you've done on your conditions of pretrial release.

So we absolutely want to give you every opportunity to succeed, Mr. Malmquist.  I am in your corner with that, as I know Ms. Cano and Mr. Browning and your family are as well.  And it's -- the stakes really couldn't be higher for you at this time, Mr. Malmquist.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Thank you, sir.  So I'll go through the conditions of your release.  And I know Mr. Browning -- and I'd also encourage Mr. John Malmquist and Ms. Lauren Malmquist, if there's anything, if you have any questions, you are welcome to join in.  We are being recorded.  We are doing a formal hearing.  But we can also at the end, we'll go off the record and Ms. Cano can give you more specific instructions and we can review the logistics.  But if there's anything that gives you concern, anything that you don't understand or think you might not be able to abide by, Mr. Malmquist, please go ahead and stop me and let me know.

First condition is that you must not violate any federal, state, or local law while you're on release.  You have to cooperate in the collection of a DNA sample if it's authorized by statute.

This is very important, sir, as you're going to be released into the custody of your sister, you need to advise

the court or pretrial services -- that would be Ms. Cano, in particular -- if you make any change to your residence or your telephone number.  She needs to be able to contact you at all times.  I don't know if you have a phone at this time, but when you get one, that will be something that will need to be conveyed to Ms. Cano.

You have -- thank you, sir.  You have to appear in court as required and surrender, if directed, when you're sentenced to the courthouse here in downtown Austin.  And that address is on your paperwork.

Continuing on, the additional conditions, you're placed into the custody of Ms. -- your sister, Ms. Lauren Malmquist.  You need to submit to supervision by, and report for supervision, to the United States Pretrial Services Office as directed.

And you will be working for your dad; is that right, Mr. John Malmquist?

MR. MALMQUIST:  Yes, ma'am.

THE COURT:  Okay.  Thank you, sir.  So you are to continue with that employment.  And you don't have any passport, correct, sir.

THE DEFENDANT:  No, ma'am.

THE COURT:  Thank you.  Your travel will be restricted to Travis County and the surrounding counties unless it's otherwise approved by the court or pretrial services.

And let me just ask either you or your dad or your sister, does that -- does that present a problem?  In fact, we probably -- I'm telling Ms. Cano.  We probably need to amend that to include Bexar County, because the treatment is going to be in San Antonio.  So we'll make that -- we'll make that change before I sign your conditions of release.

But there's nothing with work or your family that requires regular -- regular trips outside of that area, I gather?

(No audible response)

THE COURT:  Okay.  You have a condition that you need to avoid all contact, directly or indirectly, with anyone who is or may be a victim or witness in the investigation or prosecution.  And that includes all of your codefendants in your case, Mr. Malmquist.  And Mr. Browning can help make sure that you're aware of whose those individuals are.  And we also have the condition that you're not to have any contact with Cassandra Garcia.

You are not to possess a gun, any kind of firearm, destructive device, or other weapon.  And you don't own any guns, correct, Mr. Malmquist?  Is that -- did you say "no," sir?

THE DEFENDANT:  No, ma'am.  I said yes.

THE COURT:  Thank you.  You're not to use any alcohol or any other controlled substance or any controlled substances.

If it's required by pretrial, you'll need to submit for testing for use of prohibited substances.  And, again, if it's required by pretrial, you'll participate in a program of inpatient or outpatient substance abuse therapy and counseling.

Obviously, Ms. Cano has arranged for you the program -- inpatient program starting next week, and that I anticipate will be -- after it concludes, it will be followed by outpatient treatment, but that will be directed by Ms. Cano.

We have a curfew that I wanted to ask about.  You will be restricted to the residence overnight from 9:00 p.m. to 6:00 a.m.  Is there -- is there any reason, Mr. -- I'll just ask Mr. John Malmquist or Lauren Malmquist, is there any reason that -- that the defendant would need to be -- have a later curfew?  For example, I mean, does he need to do any work or any driving or assistance in any way that would require later than 9 p.m.

MS. MALMQUIST:  I don't believe so, no.

THE COURT:  Okay.  Thank you.  So that will be the 9:00 p.m. curfew.  But, obviously, then during the day you can -- you work and do what you need to do, of course, Mr. Malmquist.

Very important that you report as soon as possible to the pretrial services office or your supervising officer, Ms. Cano, any contact with law enforcement personnel, Mr. Malmquist, and that includes arrests, questioning, traffic

stops.  If you're a witness to another crime and talk to police about it, you'll need to let Ms. Cano know right away.

And the last condition is that you're ordered to appear for processing by the United States Marshal Service, and that will occur on May 27th at 9:30 in the morning.

So you'll get a copy of these.  And, in fact, you'll be asked to sign a copy of these conditions, so you'll have them and be able to refer to them, as also your custodian, your sister, will.  And I'm sure your dad can get a copy, too, as well.  But do you have any questions about any of that, Mr. Malmquist?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Yes.

THE DEFENDANT:  You said that I'm not allowed to have any contact with Ms. Sandra Garcia, but we have a pending CPS case.  And, I mean, I'm going through her family, pretty much, and her to get visits and stuff.  So how do I go about that?

THE COURT:  I think Ms. Cano may be able to address that.

MS. CANO:  Sorry.  I couldn't find my.

So, Shawn, you and I will come up with a plan.  Cassandra doesn't have custody of your child right now, right?

THE DEFENDANT:  Right.

MS. CANO:  So if you have to go to a court proceeding and she's there, that's one thing.  But do not be -- don't be

in the hallway with her.  You're -- it's not like you have to go through her for visitation, because she doesn't even have custody.  So, as that court proceeding, you know, moves through the process, then we will -- we'll tackle that as it occurs.  But, other than that, you are to have zero contact with her.

THE COURT:  And I certainly -- and I agree with that.  And, you know, Mr. Malmquist, as things go forward, we can amend the conditions.  I mean, you, Mr. Browning, or Ms. Cano can come to me and I can issue orders.  But nobody -- certainly, I do not want to do anything to interfere with your relationship with your child, Mr. Malmquist.  But I do agree with the condition of having no contact with Cassandra Garcia.

Mr. Browning, did you want to be heard?

MR. BROWNING:  Shawn, do you have a lawyer representing you in your CPS case?

THE DEFENDANT:  Yes, sir.

MR. BROWNING:  Okay.

THE COURT:  I forgot their name.

MR. BROWNING:  I can -- we can figure that out, and I can be in communication with your lawyer.  And that way we can make certain that there's no -- there's no -- there's no appearance of problems or impropriety.  We can -- we can make certain that that happens, Judge.  And I -- he does have lawyer; he has to have a lawyer.  I can figure that person out and contact them, so ...

THE COURT:  Thank you, Mr. Browning.

And, Shawn Malmquist, did you have any questions about the conditions?

THE DEFENDANT:  No, ma'am.  I think that's about it.

THE COURT:  Thank you, sir.  And, Mr. Browning, was there anything that you had questions or would like to address?

MR. BROWNING:  I'm certain this will all be in the conditions that I assume I'll get a copy of.  But how long is the program he's going to be in?

THE COURT:  That's a question for Ms. Cano.

MR. BROWNING:  Yes, I guess.

MS. CANO:  So right now, obviously, with the COVID situation, the -- the length has fluctuated.  It will be between 30 and 45 days.

MR. BROWNING:  Okay.

MS. CANO:  Once he enters the program -- and I can let you know as he progresses through the program, because I will have regular contact with him.  And as Judge Hightower indicated, after he completes inpatient, then he will complete -- he will be enrolled in outpatient treatment, which will be in Austin.

MR. BROWNING:  Okay.  Okay.  Yeah.  That's -- yeah.  Because I guess then they have to quarantine or something like that when he starts.  Okay.  And I guess my other question, Judge, probably also for Ms. Cano, I assume the Marshals

Service is going to transport him there?  Is that -- how is that --

MS. CANO:  No, sir.  So his father --

MR. BROWNING:  Okay.

MS. CANO:  -- and this was part of the end. Judge Hightower, do you want to answer?

THE COURT:  We can.  Why don't we -- we'll get to those logistics.  We can go off the record and get to the logistics.  But did you have anything else, Mr. Browning, on that?

MR. BROWNING:  No.  No.

THE COURT:  Okay.  Well, I want to just once again express my sincere thanks to Mr. John Malmquist, Ms. Lauren Malmquist.  Thank you.  Shawn, I think that you've -- you know, as I encourage you to do so, hopefully you'll be able to take advantage of this that you've never had the opportunity to do so before and get some help from the inpatient treatment program.

But I think I also would encourage you to accept the -- the help from your family.  You know, I mean, I don't know because I'm not part of your family, but it appears to me that they are certainly stepping up here to provide you with a home and with work and a fresh start.  And I think that you've got every -- every advantage that I can see, Mr. Malmquist, in terms of being successful during your period of pretrial

release.

So is there anything further that anyone wants to address before we adjourn our formal hearing?

MR. BROWNING:  Nothing from me, Your Honor.

THE COURT:  Okay.  Thank you so much.  So we're adjourned, and we can stop the recording.

(Proceedings concluded at 1:13 p.m.)

**REPORTER'S CERTIFICATE**

I, Arlinda Rodriguez, do hereby certify that the foregoing was transcribed from an electronic recording made at the time of the aforesaid proceedings and is a correct transcript, to the best of my ability, made from the proceedings in the above-entitled matter, and that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

/S/ Arlinda Rodriguez                    April 17, 2023

ARLINDA RODRIGUEZ                        DATE