**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNITED STATES OF AMERICA,                     ) AU:21-CR-00048-LY-12
                                              )
   Plaintiff,                                 )
                                              )
v.                                            ) AUSTIN, TEXAS
                                              )
SHAWN MALMQUIST,                              )
                                              )
   Defendant.                                 ) JANUARY 4, 2022

*********************************************
TRANSCRIPT OF BOND REVOCATION HEARING
BEFORE THE HONORABLE SUSAN HIGHTOWER
*********************************************

APPEARANCES:

FOR THE PLAINTIFF:    DOUGLAS W. GARDNER
                      UNITED STATES ATTORNEY'S OFFICE
                      903 SAN JACINTO BOULEVARD, SUITE 334
                      AUSTIN, TEXAS 78701

FOR THE DEFENDANT:    WILLIAM J. BROWNING
                      LAW OFFICE OF WILLIAM J. BROWNING
                      1101 WEST 34TH STREET, SUITE 139
                      AUSTIN, TEXAS 78705

TRANSCRIBER:          ARLINDA RODRIGUEZ, CSR
                      501 WEST 5TH STREET, SUITE 4152
                      AUSTIN, TEXAS 78701
                      (512) 391-8791

Proceedings recorded by electronic sound recording, transcript produced by computer.

(Proceedings began at 2:34 p.m.)

THE CLERK:  The Court calls the following for a bond revocation hearing: 1:21-CR-048, *The United States of America v. Defendant Number 12, Shawn Malmquist.*

MR. GARDNER:  Good afternoon, Your Honor.  Doug Gardner for the United States.

MR. BROWNING:  Good afternoon, Your Honor.  William Browning for Mr. Malmquist.

THE COURT:  Thank you.  And, Ms. Deichert, I don't know if she's had an opportunity to verify.  I believe the Due Process Protection Act Warning has already been administered in this case, but I will ask you to -- when she -- you have a chance -- she's doing many jobs today -- I'll ask you to go ahead and administer the oath to Mr. Malmquist.

To be specific, Ms. Deichert is doing the job of --

MR. BROWNING:  I'm sorry, Your Honor.  My allergies are acting up.  I can't --

THE COURT:  Oh.  I'll take my mask off.  Ms. Deichert is doing the job of three people today, so she's multitasking.

So the Due Process Protection Act has already been administered in this case, and she's going to administer the oath.

(Defendant sworn)

THE COURT:  Okay.  Thank you.  So we're here today for a bond revocation hearing.  And the -- the petition, as I

believe Mr. Cisneros had been in contact with Mr. Malmquist while you were away, Mr. Browning, to let him know that we had this bond revocation hearing set for yesterday morning.  And that's for the allegations in the petition, that -- that Mr. Malmquist had been in touch with Ms. Garcia, which was specifically -- Cassandra Garcia, which is specifically prohibited under the order setting conditions of release.

In the meantime, while that setting had been -- the hearing had been set for yesterday morning, we received a police incident report sent to Mr. Cisneros that Mr. Malmquist allegedly went to Ms. Garcia's house, broke out the car window -- her car window, which she alleges for the second time, in the early morning hours of January 1st at approximately 3:15 a.m.

I have several, several issues with this.  First is that Mr. Malmquist has a curfew from 9:00 p.m. to 3:00 a.m. and, again, that he's not supposed to have any contact with Ms. Garcia whatsoever.  So we reset the hearing to accommodate your schedule, Mr. Browning.  But this is obviously a very, very significant issue to me, that what appears to be repeated and escalating violations of these bond conditions have been occurring.

And I'll start out -- before I hear from counsel, I'm going to start out and let you know what my standard is.  The bond revocation statute is Title 18 of the United States Code,

Section 3148. And what I do today is, after a hearing, I need to find whether or not there's probable cause to believe that you committed another crime while on release or find by clear and convincing evidence that you violated any other condition of your release, Mr. Malmquist. And, if that's the case, based -- if there's -- whether there's any condition or combination of conditions of release that will assure that you won't pose a danger to the safety of any other person or the community or that you're likely or unlikely to abide by any condition or combination of conditions of your release.

So with -- with that preamble being said, I'll just see if Mr. Gardner has any -- has any evidence or statement that he'd like to offer? argument?

MR. GARDNER: Mr. Browning, did you receive the Round Rock Police report?

MR. BROWNING: I'm sorry?

MR. GARDNER: Have you received the Round Rock Police report.

MR. BROWNING: Yes, I have.

MR. GARDNER: Your Honor, unfortunately, Mr. Guess, whose case this is, is hindered by weather conditions in Denver. So I was just notified this morning. All I have is what is in the Court's possession with respect to the Round Rock Police report and the petition alleging the two separate incidents. I have not spoken to Ms. Garcia. I don't have any

other evidence to present beyond what the Court already has information about the two incidents.

THE COURT:  Okay.  Thank you, Mr. Gardner.

So, Mr. Browning, does your client intend to -- to plead true or not true to the allegations in the petition?

MR. BROWNING:  Well, Your Honor, on -- in terms of the alleged violation, which is from -- I guess was reported to pretrial on December 14th, but I don't think there's -- she says several months ago.  He categorically denies that he ever went there and broke her window.

THE COURT:  In fact, I believe there's a date certain.  Isn't it October 10th?  In fact, I don't have that in front of me, but I believe it was.

MR. BROWNING:  There's not in the --

THE COURT:  No.  It was -- you perhaps have an earlier version.  It was revised to add the specific date.

MR. BROWNING:  Well, Your Honor --

THE COURT:  As filed in the docket.

MR. BROWNING:  Okay.  I'm sorry, Your Honor.  I didn't -- this is what I printed off.

THE COURT:  Well, the one that I signed that's in the docket has the specific date, which is in October of [2017] [sic].  Do you have a copy of that, Mr. Gardner?

MR. GARDNER:  I do, Your Honor.

THE COURT:  Thank you.

MR. BROWNING:  I have one that was signed on December 20th.

THE COURT:  And by date we're talking about the date of the car -- the broken window in the car.

MR. BROWNING:  Okay.  I apologize, Your Honor.  This is ...

THE COURT:  Yes.  Because I had the same question, Mr. Browning, about the specific date.

MR. BROWNING:  Okay.  I guess these were signed on the same date, just in slightly different order.  I apologize, Your Honor.

Regardless, Mr. Malmquist is pleading not true to any allegation of violating, of going to her house, breaking the windows, whether it was on October 10 or January 1st.

However, they do have a child in common.  There is a CPS case going on.  Ms. Garcia's family has possessory conservatorship, if I remember my family law terms correctly, and he goes to their house to visit the child.  And there may be text messages, which is a violation, regarding visiting the child.  There may be text messages where it's Christmas pictures that he took with the children or things like that, which -- which I understand is a violation and he understands.

But in terms of going to her house, committing crimes, committing criminal mischief, violating curfew, he's pleading not true to that.

THE COURT:  So, Mr. Malmquist, you did not -- you were not at Ms. Garcia's house at 3:00 a.m. on January 1st.

THE DEFENDANT:  No, ma'am.  She doesn't even have a house.

THE COURT:  Where she resides, sir.

THE DEFENDANT:  No, ma'am.  I don't know where she even resides.

THE COURT:  Well ...

MR. BROWNING:  And to make it clear, on October the 10th, were you at her house?

THE DEFENDANT:  No, sir.

MR. BROWNING:  You plead not true to that as well?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  So do you deny that you committed any curfew violations, Mr. Malmquist?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you haven't contacted Ms. Garcia at any time other than as Mr. Browning said with regard to your child?

THE DEFENDANT:  No, ma'am.  I mean, she's -- I've had to change my number because she keeps texting me off different numbers.  And I guess her kids [unintelligible].

MR. BROWNING:  Mr. Malmquist -- if I may, Your Honor?

Mr. Malmquist, it's not a violation for her to text you.  You understand that, texting?  You texting her is a

violation.  So the judge is not asking about -- is there any other violations other than child issues?

THE DEFENDANT:  No, ma'am.

THE COURT:  Well, I think Mr. Browning makes a good point, and it's one that I want to make too as well, Mr. Malmquist, is that Ms. Garcia's not in front of me.  I'm not supervising her.  I'm supervising you.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And, as you probably recall from our hearing, which I remember very clearly, when your sister made a very compelling witness that she would be a good custodian for you, and I think you've been in -- in compliance with many of your conditions of release.  Since that time, obviously, you're no longer able to reside with your sister.  I'm extremely concerned about what this allegation is.  That -- if it occurred, which you deny it occurred, but the allegation is that it would have happened right before you knew you had this hearing.

And at time -- your bail report at the time of your original hearing, your original custody hearing, pretrial services recommended that you be detained and I wanted to give you a second chance.  And I am very, very concerned about these allegations.  So, you know, I -- I think there's a very strong argument to be made, Mr. Malmquist, that -- I would be much more comfortable, in fact, revoking your bond and ordering you

incarcerated today.

Under the terms of the statute, I can't do that today.  I don't have probable cause to find that you committed another crime or clear and convincing evidence that you violated your conditions, because you're denying them.

But I want you to understand, Mr. Malmquist, what a serious, serious issue this is to me.  There won't be another chance, Mr. Malmquist.  I mean, you had a second chance the first time, this I'm considering a third.  And this -- this it's my responsibility to protect the safety of the community, and I take that very seriously, sir.

And I don't -- as I said, I don't think I have grounds to detain you today, but any further incidences will not be tolerated in any circumstances.  And I want you to understand as well that I'm sure Mr. Browning has explained to you, if you do get revoked, not only will you spend the rest of your time in pretrial in prison, but it can have a significant impact on the ultimate sentence that you actually get, how -- at what point you would be getting out, where you can serve that time, all of that can be impacted by the -- by the revocation decision.

So what I'd like to hear from you Mr. Malmquist is that I'm not going to be hearing -- now, you can't control what other people do, but that I'm not going to be getting any further information that you're violating conditions of your

release or that you're -- you're stepping outside of anything that's contained in the order that I issued on May 21st.

Can you make that commitment to me, Mr. Malmquist?

THE DEFENDANT:  Yes, ma'am.  You will not have any more problems.

THE COURT:  Okay.  Do you have any questions for me concerning the conditions or how to be successful at this time?

MR. BROWNING:  There is something that Mr. Malmquist discussed with me, Your Honor, that I have a copy of the CPS order about custody of the child.  And that perhaps with the government, maybe we could amend his order to say that he could communicate with the family about visitation with the child, some type of language about that, so that there's no -- so it's very clear that -- that they do have a child in common and there may be inadvertent contact or they -- you know, when he's at her parents' house seeing his child.

THE COURT:  Okay.  So whose -- where does the child live?

THE DEFENDANT:  At her parents'.

THE COURT:  So does Ms. Garcia have custody?  And I don't know all the terminology either.

MR. BROWNING:  I don't believe she has any custody whatsoever.

THE DEFENDANT:  We both have the same -- I forgot the term.  It's possessory.  Her parents hold them, but we still

have our rights and everything to the kid.

THE COURT:  Okay.

MR. BROWNING:  Are the visits supervised, Mr. Malmquist?

THE DEFENDANT:  I mean, it's at the discretion to her parents and stuff.

MR. BROWNING:  Okay.  Okay.

THE COURT:  So I -- in my mind, it's going in absolute the wrong direction to give you more ability to contact Ms. Garcia.  I mean, I see that that's -- that doesn't seem to be a good position for you to be in with regard to completing your conditions.

But at the time of your original pretrial hearing, did you have visitation or possessory visitation with your child?  That has been a change since the May order?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  So how do you arrange the visits now?  Do you contact Ms. Garcia's parents directly?

THE DEFENDANT:  I mean, they pretty much just tell me to come by whenever I want to see my kid.

THE COURT:  So why would you need to have any contact with Cassandra Garcia?

THE DEFENDANT:  I mean, it's not so much that.  It's just, if I show up there or she's -- like, I mean, that's been the issue.  She shows up there, I'm there, and I just don't

want to get arrested for being there with my kid.  Or, like, I don't know, I mean, how it can get turned on me.  But I'm just trying to do what I can for my kid, and that's it.

THE COURT:  Well, I understand, and that's important. And I commend you for wanting to be a positive role model to your child and to help take care of your son.  I believe it is. But understanding you've denied the allegations, any -- you know, contacts, any inappropriate texting, and certainly any violence are -- are not what you want to be doing in front of your child.  They're not good for the child or for anyone else.

But let me -- let me take a brief recess and talk with Mr. Cisneros about conditions that we may need to -- that we may need to amend and see if he has anything that he wants to add at this time.

MR. GARDNER:  Your Honor, briefly, I'd like to -- obviously, it's not my case, but I think it would be prudent to at least look at the State paperwork so we're not running afoul of what they've prescribed for Mr. Malmquist and his wife's -- or significant other's visitation rights.  So I'd personally at least like to look at it.  I'm not family law, but I think having a copy of that to make sure that we're following, of course, what the State does.

THE COURT:  And can you elaborate on that, Mr. Gardner?  What -- what issue -- do you have a specific issue that you're concerned about?  Because before -- before

the CPS case evolved, the conditions are that Mr. Malmquist is not to have any contact with -- Cassandra Garcia, which is the mother of the child.  How -- what's your concern with the State?

MR. GARDNER:  Just thinking out loud, I'm not sure what the paperwork says.  But if the paperwork has specific requirements as to contact and visitation and when the handoff occurs and in what conditions the handoff occurs, I would be concerned that any conditions the Court might impose would either restrict or expand that previously imposed State visitation and/or custody.

THE COURT:  Perhaps we can get that from Mr. Browning, potentially?

MR. BROWNING:  Yes, Your Honor.

THE COURT:  And make sure --

MR. BROWNING:  I didn't print it out today, but I can certainly email it around later on.

THE COURT:  Yeah.  It's something certainly we can continue to work with.  And we will still take our recess, and I'll talk to Mr. Cisneros.  But we can continue to work with this to make sure that you are able to abide by your conditions, not impede your parental rights with regard to your son, but also not having any further violations with regard to Cassandra Garcia.

MR. BROWNING:  And, Your Honor, if I could say one

thing to Mr. Malmquist?

Shawn, I know it's hard for you, and I know you want to be with your child.  But I think you need to understand that, like, even if you're at your -- you're at their house and Cassandra shows up, then you need to leave.

THE DEFENDANT:  Yeah.

MR. BROWNING:  You see what I mean?  If that's -- as awkward as that may be, even if you think she's messing with you, you understand, you need to go?  You understand that?

THE DEFENDANT:  Yeah.

THE COURT:  That's said very well, Mr. Browning, and I very much appreciate it, because it's an outstanding point. And it builds a little bit on the point I made earlier, Mr. Malmquist, which is that Ms. Garcia's not before this court.  She may have issues elsewhere, but I am not supervising her, and she doesn't have the same jeopardy issues that you do have in terms of having your -- your bond revoked.

If the coordination is going to be with her parents, it should be with her parents.  And you -- you would not want to risk having any contact with Cassandra Garcia in terms of violating, whether it's this specific contact condition or any other conditions of your release.  Does that make sense?

THE DEFENDANT:  Yes.

THE COURT:  And I think Mr. Browning probably said it better than I did.

15

We'll take a brief recess, and I'll speak with Mr. Cisneros and come right back.

MR. BROWNING:  And, Your Honor, I'll try to get a copy of that order right now.

THE COURT:  Okay.  We'll be back.  We're not adjourning yet.

(Recess from 2:51 to 2:55 p.m.)

THE COURT:  Okay.  Thank you.  We are back on the record.  And I'm going to -- Ms. Deichert a moment.  Okay. Thank you.

And I'm going to let Mr. Cisneros speak briefly before we wrap up today.

MR. CISNEROS:  I just want to point out that Mr. Malmquist has been in compliant on bond and attending treatment.

THE COURT:  One second, Mr. Cisneros.  Can you hear him, Mr. Browning?

MR. BROWNING:  Just barely.

THE COURT:  You might need to take your mask off while you're speaking.

MR. CISNEROS:  Okay.

THE COURT:  Take it off while you're speaking.

MR. CISNEROS:  Okay.  So he's been compliant while on bond, he reports as instructed, he maintains regular contact with me, he does really well in treatment.  So, aside from

that, he's been fully compliant with all his other conditions. I just wanted to put that on the record to make sure that -- I know that we're referencing some of the downs, but I want to reference some of the ups also at this time.

MR. BROWNING:  Thanks for that.

THE COURT:  Thank you, Mr. Cisneros.  And so, as I already said before, I'm not going to revoke your bond today, Mr. Malmquist, so I'm going to deny the petition to revoke.

And I'll let people hear me, too.

We are going to be -- the pretrial services will be checking on your curfew, so they'll be making calls to ensure that you're -- that you're abiding by that curfew going forward.  And I'm also going to ask Mr. Browning -- in fact, we can -- we can continue -- go ahead and deny the petition to revoke, but if you'll submit any paperwork that's necessary, we can review -- CPS paperwork -- and consider amending your condition 7(g), which is specifically how -- to make sure we're abiding by what the State requires so that you are not interfering with contact with your son.

But I think Mr. Browning made this point, and I can't reiterate strongly enough, Mr. Malmquist, that this is not the time to have any contact with Cassandra Garcia.  You're -- at this time you have the condition that still requires you not to have any contact with her whatsoever.  That includes by electronic, in person, any contact at all.  So -- so visitation

with your son and time spent with your son through her parents I'm sure is appropriate.

So -- so, Mr. Gardner, is there anything further that you want to address before we adjourn?

MR. GARDNER:  Your Honor, Mr. Browning was able to pull up the SAPCR paperwork before we -- while the Court was in adjournment.  And I don't think the -- the Court needs to do anything, but there's a 48-hour, in-writing requirement for arranged visitation that's been agreed upon by the parties.

I think the Court's already emphasized this, that Mr. Malmquist can't control what either Ms. Garcia does or Ms. Garcia's parents.  He can only control what he does.  So I think as long as -- I assume there's a requirement in the release conditions that he abide by all previous court orders and other legal requirements.

So as long as he's abiding by the 48-hour written requirement notice, Your Honor, again, I think he's probably in good stead.

THE COURT:  And I would think that the -- and the acronym that you used, I'm not familiar with.

MR. GARDNER:  Suit affecting parent-child relationship.

THE COURT:  Thank you, sir.

MR. GARDNER:  I picked up one or two things over the years, Your Honor.

THE COURT:  Yes, sir.  Yes, sir.  I haven't had those in this court.  But I think that the 48-hour -- to abide by these conditions of release for your 48-hour written notice would -- I would encourage.  And if it's workable, to say that Ms. Cassandra Garcia shouldn't be there at the time you're having your visitation.  So thank you, Mr. Gardner.

Mr. Browning, what else would you like to address today?

MR. BROWNING:  Well, Your Honor I will send this around to -- to everybody involved.  And there's an attachment that kind of details how to set up visits.  But I think Mr. Gardner, I think just follow all court orders I think would summarize it.  But I can certainly send this around so that everybody knows what's going on.

And I -- and I cannot stress enough -- I think it's now maybe the third time on the record.  You know, you're under the court supervision, not her.  And so, you know, you need to leave if there's a problem, if she's there, and there's no more communication.  You understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Do you have any questions for me before we adjourn, Mr. Malmquist?

THE DEFENDANT:  No, ma'am.

THE COURT:  Okay.  Thank you to everyone for being here, to counsel.  Mr. Malmquist, I -- I encourage you to

continue abiding by your conditions and complete your pretrial release successfully, sir.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Thank you.

MR. BROWNING:  I appreciate you accommodating my vacation.

THE COURT:  Well, I didn't give you -- I think you asked for two weeks or something, but I gave you a day anyway. So thank you.

MR. BROWNING:  I could -- I think I said I could have been here yesterday, so ...

THE COURT:  Okay.  Thank you.

(Proceedings concluded at 3:00 p.m.)

**REPORTER'S CERTIFICATE**

I, Arlinda Rodriguez, do hereby certify that the foregoing was transcribed from an electronic recording made at the time of the aforesaid proceedings and is a correct transcript, to the best of my ability, made from the proceedings in the above-entitled matter, and that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

/S/ Arlinda Rodriguez                    April 17, 2023

ARLINDA RODRIGUEZ                          DATE