# United States Court of Appeals
# for the Fifth Circuit

FILED
February 28, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ klw _____
DEPUTY

_____

No. 22-50872

_____

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Shawn Malmquist,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CR-48-12   RP

_____

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is VACATED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

**Certified as a true copy and issued
as the mandate on Feb 28, 2024**

**Attest:**

*Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# United States Court of Appeals
# for the Fifth Circuit

————————

No. 22-50872

————————

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Shawn Malmquist,

*Defendant—Appellant*.

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CR-48-12

————————————————————

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Shawn Malmquist appeals from a guilty-plea conviction and sentence of 151 months of imprisonment and four years of supervised release for conspiracy to possess with intent to distribute 50 grams or more of methamphetamine. On appeal, Malmquist contends that the Government breached the clause of the plea agreement in which the Government promised to recommend a three-level acceptance-of-responsibility reduction. Malmquist argues that the Government's opposition to the reduction at sentencing constituted plain error because there is a reasonable probability that, but for the breach, he would have received a lesser sentence,

No. 22-50872

and the Government's improper extraction of benefits from the agreement resulted in a miscarriage of justice.

We conclude that the Government's breach of the plea agreement constituted plain error because the breach affected Malmquist's substantial rights and called into question the fairness, integrity, and public reputation of the judicial proceedings. Therefore, we VACATE Malmquist's sentence and REMAND for resentencing.

## I.

In July 2022, Malmquist pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine. 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B). According to the presentence investigation report ("PSR"), Malmquist was part of an Austin, Texas-based methamphetamine-trafficking organization. He was one of 33 participants charged in this conspiracy and was identified as being a drug distributor.

In April 2021, an initial hearing was held to address the Government's application for pretrial detention. The magistrate judge denied the Government's request in part and pronounced that Malmquist would be detained only until there was availability in an inpatient residential drug treatment program. In May 2021, Malmquist was released on bond following a detention hearing and scheduled to enter an inpatient residential drug treatment program within approximately one week, subject to mandated conditions of pretrial release. Malmquist successfully completed that residential program in July 2021.

On March 31, 2022, however, a pretrial-services officer filed a petition to modify the conditions of pretrial release following Malmquist's submission of two positive drug tests. When confronted with these results, Malmquist eventually admitted to using methamphetamine prior to these

drug tests.  In the petition, the officer also recounted Malmquist's successful completion of the residential drug treatment program, the reduction in mandated counseling sessions per month due to his progress, and Malmquist's active participation in the treatment sessions.  Although, as noted, such violations could have resulted in the revocation of his pretrial release, the officer recommended that Malmquist increase the number of individual counseling sessions and random drug tests.  The magistrate judge and Government concurred with these modifications.

Approximately six weeks later, on May 10, 2022, Malmquist was arrested after being found in possession of methamphetamine following a traffic stop during his mandated curfew.  He was detained in a local jail in Williamson County.  The pretrial-services officer filed a petition for an arrest warrant and the revocation of Malmquist's pretrial release the following day, and the warrant was issued thereafter.  Malmquist remained in Williamson County custody until he was transferred to federal custody pursuant to a writ on July 5, 2022.

On July 1, 2022—*after* Malmquist's arrest for possession of methamphetamine and while he was *still* in custody in Williamson County— Malmquist and the Government entered into a written plea agreement.  As part of this agreement, the Government guaranteed—as relevant here—that it would "recommend that [Malmquist] receive a three level downward adjustment for acceptance of responsibility."  In the agreement, Malmquist waived his right to appeal and to collaterally challenge his conviction and sentence.  Also in the agreement, Malmquist further confirmed that he understood that his breach of the terms of the plea agreement would release the Government from its obligations.

On July 6, 2022, the magistrate judge revoked Malmquist's pretrial release and ordered that he be detained pending further proceedings. The Government did not appear at this proceeding.

Later that afternoon, Malmquist pleaded guilty, pursuant to his written plea agreement, to the underlying offense before the magistrate judge. As recommended by the magistrate judge, the district court accepted the guilty plea.

The PSR assessed a total offense level of 30, and a criminal history category of VI. The probation officer determined that an acceptance-of-responsibility reduction under U.S. Sentencing Guidelines § 3E1.1 was *not* applicable due to Malmquist's "noncompliance issues" and bond revocation. The advisory guidelines range was 168 to 210 months of imprisonment, with a statutory minimum of five years of imprisonment.

In the "Offender Characteristics" section, the probation officer stated that Malmquist's "methamphetamine dependency has proven to be a common issue during his adult life, as the frequency of his methamphetamine consumption correlates to his involvement with serious criminal conduct." The officer added, as was consistent with the pretrial-services officer's petition to modify pretrial release conditions, that "[p]rior to [the] noncompliance issues [while on pretrial release], [Malmquist] was making significant progress towards his treatment goals, as he remained sober and continued with counseling."

Defense counsel filed objections to the PSR and argued, *inter alia*, that a three-level § 3E1.1 acceptance-of-responsibility reduction was applicable because Malmquist "plead[ed] guilty promptly and . . . never denied guilt of the charged offense." In response, the probation officer contended that a reduction was not applicable due to Malmquist's behavior "while on pretrial release and prior to his guilty plea," specifically the positive drug tests and

4

No. 22-50872

possession of methamphetamine.  The Government did not object to the PSR or submit a response to Malmquist's objections.

At sentencing, defense counsel's argument as to the § 3E1.1 reduction was that he "believe[d] that [Malmquist] did accept responsibility."  At this point, the Government countered:

> As to the objection as to whether or not the acceptance of responsibility points should be awarded, again, the pretrial services officer got this right, Your Honor. . . . Mr. Malmquist and his family told [the magistrate judge] he [could] be good. He [could] behave himself while he's out on pretrial release. We'll put him in a program.  We'll make sure that he does what he's supposed to do.  Mr. Malmquist told [the magistrate judge] that he could abide by the conditions that she set for him.  Put him into a program.  And, as you can see from the presentence report, he failed out of that program.  Twice he tested positive for methamphetamine.
>
> More importantly, the court gave him one more chance and said, You know what?  I'm going to let you stay out as long as you agree that you won't violate the law any longer.  What did Mr. Malmquist do?    Went out and scored more methamphetamine.  This time it was 50 grams.  Again, that's a distribution amount, Your Honor.
>
> Mr. Malmquist has not learned a single lesson in the time that he was first arrested in April of 2021 until he was re-incarcerated.  If he had stayed in jail, we wouldn't be talking about the acceptance of responsibility points.  Instead, Mr. Malmquist made that decision and the pretrial services officer got this correct.

Defense counsel responded that the acceptance-of-responsibility reduction was applicable because Malmquist admitted his guilt and "[i]f there[ was] any delay, that ha[d] to do with discovery review and the volume of calls in this case."

5

No. 22-50872

The district court overruled defense counsel's objections and announced its decision:

> Defendants usually get acceptance of responsibility. And I think [the Government] is correct when [it] says that if this defendant had remained in jail, we wouldn't be talking about the three points for acceptance of responsibility right now. But we are because this defendant appeared in front of a magistrate judge and a magistrate judge conducted a hearing. It was represented to the magistrate judge that the defendant understood the situation, he was released on bond, knowing what would happen if he reverted to the use of drugs.
>
> I'm highly sympathetic to his situation and I do believe that he should get drug treatment, but I find he is not entitled to acceptance of responsibility, because after those representations, he went back to at least the use of drugs, and perhaps due to the quantities, might have distributed some or might not. I do not make a finding that he did, but he violated the representations to the court with regard to use and proximity of drugs and he is not entitled to the acceptance of responsibility.

Defense counsel made no further objection.

The parties then made their final arguments. Defense counsel requested a sentence of "less than 100 months," which he calculated to be the "average" of the sentences imposed for the codefendants to date. The Government stated that a sentence "at the low end of the guideline range [was] appropriate."

After several of Malmquist's family members made statements of support, the district court adopted the PSR, and pronounced its sentencing determination. It acknowledged that it had reviewed the plea agreement, considered the underlying facts, listened to Malmquist's letter of apology and family members, and reviewed Malmquist's personal background. The court

confirmed that it was "willing to accept the fact that [Malmquist's involvement in the drug-trafficking organization] was due to [his] drug addiction," because it thought that he had "an extreme drug addiction," but his addiction "in no way lessen[ed]" his role in the offense because many of the codefendants had drug addictions as well. Further, the court stated that it would impose a sentence that was "more accurate with regard to other [defendants] that [it had] sentenced in this case in an attempt to balance everybody out."

During its explanation, the district court discussed the acceptance-of-responsibility reduction on several occasions. It stated that when Malmquist was "given a chance where [he] could have gotten some time down under the guidelines for acceptance of responsibility, [he] violated that." The court then pronounced:

> [The court] find[s] that the difference between what guidelines would have come up with had you satisfied your pretrial release and gotten credit for acceptance of responsibility and the guidelines that [the court is] applying today is more harsh [sic] than it needs to be. It was too great a penalty there.

The court elaborated that it would impose a sentence "somewhat below the guideline range" which was "more of an appropriate penalty because of [Malmquist's] violation of [the] terms of pretrial release."

Having considered the 18 U.S.C. § 3553(a) sentencing factors, the district court imposed a below-guidelines sentence of 151 months of imprisonment and four years of supervised release. Again, addressing the acceptance-of-responsibility reduction, the court clarified that it would not give Malmquist credit for the time he spent in custody in Williamson County "because of [the] court's policy," and that this was "yet another penalty [Malmquist was] suffering because [he] couldn't make good on" the pretrial release conditions. There were no further objections.

Malmquist timely filed a pro se notice of appeal on the grounds of (1) prosecutorial misconduct resulting from the Government's breach of the plea agreement "openly in court," and (2) ineffective assistance resulting from defense counsel's failure to object to the breach. *See* Fed. R. App. P. 4(b)(1)(A).

## II.

We have jurisdiction over Malmquist's appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. As a preliminary matter, an appellate waiver provision does not bar a plea-agreement-breach claim because the Government's breach "void[s] the plea agreement (including the defendant's waiver of appeal)." *United States v. Keresztury*, 293 F.3d 750, 756 (5th Cir. 2002); *see United States v. Cluff*, 857 F.3d 292, 297 (5th Cir. 2017) (considering the defendant's argument, despite the appeal waiver, that the Government breached the plea agreement by not recommending an acceptance-of-responsibility adjustment); *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002) ("[W]here the government has breached . . . a plea agreement, the defendant is necessarily released from an appeal waiver provision contained therein.").

Generally, a claim that the Government breached a plea agreement is reviewed de novo. *Cluff*, 857 F.3d at 297. However, Malmquist failed to preserve his prosecutorial-misconduct-and-Government-breach objection in the district court, so we review his breach claim for plain error. *See Puckett v. United States*, 556 U.S. 129, 133-34, 138 (2009); *United States v. Williams*, 821 F.3d 656, 657 (5th Cir. 2016). To succeed on plain-error review, a defendant must demonstrate that (1) there is an error "that has not been intentionally relinquished or abandoned"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; and (3) "the error must have affected [his] substantial rights." *Williams*, 821 F.3d at 657 (internal

quotation marks and citation omitted).  Even if the defendant makes this showing, we have discretion to correct the error "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks, brackets, and citation omitted).

## III.

Malmquist argues that the Government breached the plea agreement by advocating for the denial of the three-level acceptance-of-responsibility reduction despite having explicitly guaranteed that it would recommend such a reduction in the plea agreement.  Although it failed to do so in its brief, the Government acknowledged at oral argument that it committed clear error by breaching the plea agreement.  *See* Oral Argument at 13:47-53; *Keresztury*, 293 F.3d at 756; *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005); *United States v. Kirkland*, 851 F.3d 499, 503 (5th Cir. 2017).

## IV.

Because the Government breached Malmquist's plea agreement, "[t]he first two plain-error factors are clearly met," and therefore the crux of this appeal concerns the third and fourth factors.  *Williams*, 821 F.3d at 658.  On appeal, Malmquist argues that the breach "affected [his] substantial rights because there is a reasonable probability that, but for the breach, he would have received a lesser sentence through a three-level downward adjustment."  Malmquist further asserts that the Government's breach affected the fairness, integrity, and public reputation of the judicial proceedings because he "surrender[ed] . . . numerous [c]onstitutional rights" in exchange for the Government's promise and the Government "extract[ed] benefits" having already known about Malmquist's post-indictment violative acts.

The Government counters that Malmquist cannot demonstrate that it was "reasonably likely [that he would have] receive[d] an acceptance-of-

responsibility reduction regardless of any breach." Further, it asserts that "[g]iven the court's decision to sentence [him] outside the guideline range, Malmquist has not shown it was reasonably likely that the district court would have imposed a different sentence even if it had reduced his offense level for acceptance of responsibility." As to the fourth prong, the Government argues that because Malmquist "did not cease his life of crime" after his indictment, the reputation of the judicial proceedings is not at issue. *Puckett*, 556 U.S. at 143.

## A.

In the sentencing context, "[a]n error affects an appellant's substantial rights when there is a reasonable probability that, but for the error, he would have received a lesser sentence." *Williams*, 821 F.3d at 657-58 (internal quotation marks and citation omitted). Specifically, "[t]he Government's breach of its promise to recommend a lesser sentence affects a defendant's substantial rights unless the record indicates that . . . the district court would have imposed the same sentence regardless of the Government's breach." *Kirkland*, 851 F.3d at 503. A defendant's substantial rights are affected when "[t]here is no indication the district court would have been unmoved by the Government's recommendation." *Williams*, 821 F.3d at 658. This standard reflects both the "reasonable probability" showing required of the defendant and "the common sense understanding of the important role the Government's recommendation plays in sentencing." *Kirkland*, 851 F.3d at 503.

There is an additional inquiry where, as here, the Government "did not merely remain silent," but rather "aggressively argued" for the opposite of what was promised in the plea agreement. *Id.* at 504. Under those circumstances, we "must consider not only the possibility that the district court would have been influenced" had the Government made the promised

recommendation, "but also the possibility that the district court was influenced by the Government's recommendation of, and argument for," the opposite of what was promised. *Id.* (emphasis omitted). If the record indicates that "the district court may have been influenced not only by the Government's recommendation, but also by [the] Government's passionate emphasis of aggravating factors in support of that recommendation," it cannot be said that the sentence would have been the same absent the breach. *Id.* at 504-05.

The Government contends that it did not "aggressively argue[]" against the acceptance-of-responsibility reduction, *id.* at 504, but merely "endors[ed] the recommendation of court staff." However, the Government actively opposed the reduction and made several misstatements at sentencing. Malmquist did not "fail[] out of [the] program" as the Government alleged, but rather successfully completed the court-ordered residential drug treatment program in July 2021 and then made progress in the outpatient services such that he was rewarded in February 2022 with a decrease in the frequency of the mandated counseling sessions. The Government's assertion that Malmquist had "not learned a single lesson" since he was first arrested discounted these successes. When Malmquist first violated the terms of his pretrial release, it was not only the magistrate judge who gave him "one more chance," as the Government claimed. Rather, the pretrial-services officer was the one who made that suggestion and the Government concurred. The Government concluded at the sentencing hearing by stating that the parties "wouldn't be talking about the acceptance of responsibility points" had Malmquist "stayed in jail" and not made the decision to violate his pretrial release terms, when in fact the Government had agreed to recommend "a three level downward adjustment for acceptance of responsibility" *after* it was already aware of Malmquist's arrest for possession of methamphetamine in Williamson County.

No. 22-50872

It is reasonably likely that, but for the Government's breach, the district court would have imposed a lesser sentence. *See id.* at 503-05. First, the district court's expressed hesitancy in denying the reduction demonstrates that there is a "possibility that the district court would have been influenced" by the Government's recommendation for an acceptance-of-responsibility reduction and, further, that there is a "possibility that the district court was influenced" by the Government's "passionate emphasis of aggravating factors" in its advocacy to deny the reduction. *Id.* at 504-05 (emphasis omitted). When announcing its decision concerning the § 3E1.1 reduction, the court began by stating that "[d]efendants usually get acceptance of responsibility" but that the Government was "correct" that the reduction would not even be a discussion during this proceeding had Malmquist "remained in jail." That determination rested on a misrepresentation by the Government.

Next, when addressing Malmquist's criminal history, the court acknowledged that "he could have gotten some time down under the guidelines" had Malmquist not "violated" the "chance" he was given. Again, this statement may have been colored by the Government's advocacy against the acceptance-of-responsibility reduction and its inaccurate characterization of Malmquist's conduct on pretrial release. The court then declared that the resulting guidelines range, as it had been calculated without the credit for acceptance of responsibility, was "harsh[er] than it need[ed] to be" and "too great a penalty." Accordingly, the court imposed a below-guidelines sentence, in part, to give a "more appropriate penalty" despite Malmquist's violation of his pretrial release. The district court's explanation here undermines the Government's argument that the outcome, regardless of the breach, was inevitable.

Moreover, the court's emphasis on Malmquist's drug addiction further suggests that the Government's support for the reduction may have

12

been influential. The Government's post-violation promise to recommend the reduction may have indicated to the district court that weight should be given to Malmquist's history of successes with substance-abuse treatment, which showed his initial progress toward "withdraw[ing] from criminal conduct." U.S. SENT'G GUIDELINES MANUAL § 3E1.1 cmt. n.1(B) (U.S. SENT'G COMM'N 2023) [hereinafter "U.S.S.G."].

It is true, as the Government urges, that Malmquist engaged in post-indictment conduct to warrant the denial of an acceptance-of-responsibility reduction based on a finding that he had not "withdr[awn] from criminal conduct after being charged in the pending offense." *United States v. Franks*, 46 F.3d 402, 406 (5th Cir. 1995) (per curiam) (citing U.S.S.G. § 3E1.1 cmt. n.1(B)) (affirming the denial of an offense-level reduction where the defendant's possession of ammunition and drugs while on bond pending the disposition of his case indicated continued involvement in criminal conduct); *see United States v. Puckett*, 505 F.3d 377, 387 (5th Cir. 2007), *aff'd in part*, 556 U.S. 129 (2009). The Government asserts that because of this conduct, Malmquist would not have obtained the § 3E1.1 reduction regardless of the Government's breach.

The Government relies on the Supreme Court's decision in *Puckett* and this court's decision in *United States v. Hinojosa*, 749 F.3d 407 (5th Cir. 2014), cases in which the denials of the acceptance-of-responsibility reduction were affirmed because the courts found that the circumstances demonstrated it was "likely [that the defendant] would not have obtained [the] benefits [of the plea agreement] in any event," regardless of any breach. *Hinojosa*, 749 F.3d at 414 (quoting *Puckett*, 556 U.S. at 142). However, both cases are distinguishable. In *Puckett*, the Government agreed in the plea agreement that the defendant qualified for an acceptance-of-responsibility reduction and later opposed that reduction because the defendant committed another crime *after* the plea agreement was executed. *See* 556 U.S. at 131-32.

13

In *Hinojosa*, as here, the Government was aware of the defendant's post-indictment misconduct when it promised to recommend an acceptance-of-responsibility reduction. 749 F.3d at 414. However, the Government's promise in *Hinojosa* "was conditioned on [the defendant] 'clearly demonstrat[ing] his acceptance of responsibility,'" *id.*, but here, the Government's promise to recommend the reduction was unconditional, *see* And in *Hinojosa*, this court did not ultimately determine whether the Government's conduct constituted a breach of the plea agreement, *id.* at 414, whereas here, the breach is undisputed.

Moreover, in neither case did the district court express sympathy for the defendant's underlying issues that led to the criminal conduct, nor state that the denial of the reduction was particularly harsh, as occurred here. To the contrary, in *Puckett* and *Hinojosa*, the district court denied the reduction without hesitation and with solely negative comments. *See Puckett*, 556 U.S. at 132 (quoting the district court's observation that "it's so rare as to be unknown around here where one has committed a crime subsequent to the crime for which they appear before the court and for them even then to get the three points" (alterations omitted)); *Hinojosa*, 749 F.3d at 414 (noting that the district court found the defendant's "credibility so lacking that it was 'suspicious of any word out of his mouth'").

Finally, the Government asserts that "Malmquist has not shown it was reasonably likely that the district court would have imposed a different sentence even if it had reduced his offense level for acceptance of responsibility." But the district court's comments at sentencing cut against this argument. The 151-month sentence was 17 months less than the bottom of the advisory guidelines range of 168 to 210 months of imprisonment. Had the three-level reduction been applied, the resulting advisory guidelines range would have been 130 to 162 months of imprisonment. *See* U.S.S.G. ch.5, pt. A (sentencing table). Under that range, 151 months would have been

21 months above the bottom of the range and closer to the high end of the range. Thus, because "[t]here is no indication the district court would have been unmoved by the Government's recommendation," *Williams*, 821 F.3d at 658, there is a reasonable probability that the court would not have imposed the same sentence had the Government fulfilled its promise by affirmatively advocating for the acceptance-of-responsibility reduction.

**B.**

The fourth prong of the plain-error analysis is determined "on a case-specific and fact-intensive basis." *Kirkland*, 851 F.3d at 505 (quoting *Puckett*, 556 U.S. at 142). However, there is a "rebuttable presumption that the Government's meaningful breach of a plea agreement satisfies [this] prong." *Id.*; *see Williams*, 821 F.3d at 658; *Munoz*, 408 F.3d at 226. A breach "constitutes a particularly egregious error" and there is an "inherent unfairness involved in the Government's inducement of the defendant's waiver of important constitutional rights by making promises that it ultimately does not keep." *Kirkland*, 851 F.3d at 505-06. As of 2022, the Government resolved approximately 98% of federal convictions by securing guilty-plea confessions. *See* Mark Motivans, U.S. Dep't Just., Off. Just. Programs, Federal Justice Statistics, 2022, at 11 (2024), https://bjs.ojp.gov/document/fjs22.pdf [https://perma.cc/WDH3-ZQAH] (dividing the percentage of guilty-plea convictions by the total percentage of convictions). Put otherwise, plea bargaining, necessarily outside of judicial purview, *see* Fed. R. Crim. P. 11(c)(1), *is* our criminal justice system. It is therefore imperative that the Government honor its word.

Nevertheless, the Supreme Court has held that the Government can rebut the miscarriage presumption where a defendant "obviously [does] not cease his life of crime" and where "receipt of a sentencing reduction for

acceptance of responsibility would [be] so ludicrous as itself to compromise the public reputation of judicial proceedings." *Puckett*, 556 U.S. at 143 (emphasis omitted).

Here, the government has failed to rebut the presumption that its breach affected the fairness, integrity, and public reputation of the judicial proceedings. Again, unlike in *Puckett*, the Government was aware of Malmquist's violation *before* it signed the plea agreement. *See Kirkland*, 851 F.3d at 506 ("The Government cannot extract benefits from a defendant who it knows has committed bad acts and later argue that it should not be held to its bargain because the defendant has committed those bad acts."); *cf. Puckett*, 556 U.S. at 132 (recounting that the Government had agreed to support an acceptance-of-responsibility reduction "'a long time ago,' before [the defendant] had engaged in the additional criminal behavior" (citation omitted)). Additionally, unlike the defendant in *Puckett*, who exhibited no behavior suggesting any "withdrawal from criminal conduct" prior to sentencing, U.S.S.G. § 3E1.1 cmt. n.1(B), Malmquist had a history of successes with substance-abuse treatment, which the Government discounted in its sentencing advocacy against the acceptance-of-responsibility reduction. For these reasons, the Government has not rebutted the presumption that its breach constituted a "miscarriage of justice," *Kirkland*, 851 F.3d at 505, and Malmquist has therefore satisfied the fourth prong.

## V.

Because the Government's breach of the plea agreement constituted plain error, we VACATE Malmquist's sentence and REMAND for resentencing.

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

February 28, 2024

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

        No. 22-50872    USA v. Malmquist
                        USDC No. 1:21-CR-48-12

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Mary Frances Yeager, Deputy Clerk
                        504-310-7686

cc:  Mr. Joseph H. Gay Jr.
     Mr. Greg Thomas Kinskey
     Mr. Zachary Carl Richter